THE STATE, *ex rel. C. C. Coleman, as Attorney-general, etc.*, v. THE CITY OF OAKLAND *et al.*

No. 13,896.   (77 Pac. 694.)

SYLLABUS BY THE COURT.

1. CITIES AND CITY OFFICERS—*Notice of Application to Organize City of Third Class Specified.* In an application by the electors of a town or village to the board of county commissioners to organize a city of the third class notice of the presentation of the petition for organization must be published in a newspaper, if there be one printed in the town or village; if not, ten printed notices of such presentation must be conspicuously posted in the town or village, but the names of the signers of the petition to organize are not an essential part of the posted notices.

2. ———— *Typewriter Notices Sufficient.* Notices printed on a typewriter are sufficient to meet the statutory requirements.

Original proceeding in *quo warranto.*   Opinion filed July 7, 1904.   Judgment for defendants.

*C. C. Coleman*, attorney-general, *Edwin A. Austin*, and *D. H. Branaman*, for The State.

*Garver & Larimer*, for defendants.

The opinion of the court was delivered by

JOHNSTON, C. J. : This proceeding involves the sufficiency of certain preliminary steps taken in the attempted organization of a city of the third class.   On January 18, 1904, and upon the petition of 368 electors of the town of Oakland, constituting a large majority of the electors residing therein, the board of county commissioners of Shawnee county ordered and declared Oakland to be incorporated as a city of the third class, and designated its boundaries.   In pursuance of the order of the board an election was held within the city on February 3, 1904, at which a mayor, a police judge, and five councilmen were elected, and they qualified and are now assuming to act as officers of the city.   To test the validity of the organization and the right of the officers so chosen to exercise the functions of city officers of Oakland is the purpose of this proceeding.

The petitioners and the remonstrants appeared before the board by themselves and attorneys and presented testimony and arguments for and against the proposed organization, and upon this proof the board found that the petition was signed by a majority of the electors as well as of the taxable inhabitants ; that a majority of the taxable inhabitants and electors were in favor of the incorporation of the city ; that the prayer of the petitioners was reasonable and should be granted ; that, as no newspaper was printed within the limits of Oakland, ten printed notices, each containing a copy of the petition and stating the time and place of the presentation and hearing of the same, had been posted for more than three consecutive weeks preceding the hearing of the petition, in all respects as required by law.

The first contention is that an insufficient notice of the presentation of the petition and the hearing before the board was given. The statute provides, among other things, that when the petition for organization is presented those interested shall at the same time accompany it "with satisfactory proof that such petition has been published in full in some newspaper printed in said town or village at least once in each week for three consecutive weeks," etc. There is a provision that "if no newspaper be published in said town or village, then ten printed notices shall be posted conspicuously in said town or village in each instance where publication in a newspaper is required by the provisions of this section." (Gen. Stat. 1901, § 1076.) The alleged defect in the notice is that the petition embodied therein did not contain the names of the petitioning electors. It did include all the recitals in the petition, including the essential statements of the metes and bounds of the proposed city and the number of inhabitants therein, together with the prayer that it be incorporated as a city. In the notice, and preceding the petition, was the following statement:

"To Whom it may Concern: All persons interested are hereby notified that the following is a copy of the petition signed by 368 electors and 225 taxable inhabitants of the territory described therein, said petition being on file in the office of the county clerk of Shawnee county, Kansas, and which will be presented to the board of county commissioners of Shawnee county, Kansas, at their first regular session after the 9th day of January, 1904."

What must the notices contain? Because the provision for the newspaper notice requires the petition to be printed in full, it is argued that even the names of the petitioners must be printed in the newspaper,

and that the notices to be posted, if no newspaper be· published in the town or village, must contain all that is required in the newspaper publication.   Passing the question whether the names of the petitioners are· required in a newspaper publication, we remark that the statute does not provide that the posted notices shall be the same as that published in the newspaper. The essential feature and purpose of the posted notices· is to advise the electors of the town or village that a petition for the organization of a city will be presented to the board of county commissioners at a specified time.   It should contain a statement of the metes and bounds of the proposed organization and the number of inhabitants within those limits, so that those who would be affected by the action of the board might have warning and an opportunity to oppose or favor· the incorporation.   The application to be made to the board of county commissioners, or rather the action· to be invoked, was the important thing, and that was fully stated in the notices posted.   As the statute does not prescribe a particular form, and as those posted fully subserved the legislative purpose, they are deemed to be sufficient.   It might be remarked that the notices appear to have been effectual, as nearly all the electors and taxable inhabitants partici-, pated in the matter by either favoring or opposing the proposed organization.

It is also contended that the notices were defective because they were in typewriting, but there is no merit in the point.   The statute, it is true, provides that printed notices shall be posted ; but those which were posted in this case were, in a sense, printed notices. Of what consequence was it whether the letters in the notices were formed by a typewriting machine or a typesetting machine ?   In either case the letters are·

-substantially in the same form, are made from types, and are impressed on paper in lines and columns of varying length. In the Century Dictionary the word "typewrite" is defined: "To print or reproduce by means of a typewriter;" and the word "typewriting" is defined: "The process of printing letter by letter by the use of a typewriter." Printing is now accomplished by a great variety of machines, but none is in more common use than the typewriter. There are cases where there is room for a distinction between typewriting and printing, and in these the language used in the rule or statute ordinarily indicates a purpose to differentiate one from the other; but no such purpose is apparent in the statute in question. The notices will accomplish the purpose equally well, whether printed with a typewriter or with some other kind of a printing-machine.

Under the agreed statement of facts, the incorporation of the city of Oakland is valid, and, therefore, judgment must go in favor of the defendants.

All the Justices concurring.