No. 22,857.

BOSSEMEYER BROTHERS, *Appellees,* v. H. J. NEILSON and L. N. MILLER, doing business as THE WOODSON COUNTY GRAIN COMPANY, *Appellants.*

### SYLLABUS BY THE COURT.

SALE OF GRAIN—*Rules of Grain Dealers' Association—Contract Provided for Ten-day Shipment.* Under the correspondence, and the rules of the grain dealers' association by which the parties were bound, it is held that the contract provided for a ten-day shipment.

Appeal from Woodson district court; JAMES W. FINLEY, judge *pro tem.* Opinion filed March 12, 1921. Affirmed.

*G. H. Lamb,* and *W. E. Hogueland,* both of Yates Center, for the appellants.

*S. C. Holmes,* of Yates Center, and *J. H. Agee,* of Superior, Neb., for the appellees.

The opinion of the court was delivered by

WEST, J.: The defendants bought some grain of the plaintiffs. A dispute arose as to the time of shipment provided for in the contract. Certain cars were refused and this action was brought. The seller prevailed and the adversaries appeal, presenting the sole question whether the former had ten days in which to ship the grain as claimed by them or only five as contended by the latter.

The defendants on August 2, 1917, wired the plaintiffs: "Quote number three corn, number three white corn," and received on the same day a reply: "Number three corn $2.24, number three white corn $2.35," and wired back at 12:12 p. m.: "Book two carloads number three white corn, two carloads number three corn. Bill to Strong City, Kansas." The rules of the grain dealers' association under which both parties acted provided that immediate shipment should mean three days, quick shipment five days, prompt shipment ten days, and that when no specification as to time was named in the contract, prompt shipment should be implied. On the same day the telegrams were sent, the defendants wrote confirming the purchase of two cars of number three corn at $2.24, quick shipment. This letter was received by the plaintiffs on August 4.

The defendants insist that having in the letter of confirmation thus directed shipment within five days, and having received no wire from the sellers, the time of shipment was thereby fixed at five days, and hence the former were not compelled to accept the grain thereafter. The first car was shipped August 6, the second August 8. These were accepted and paid for before the defendants knew that the other cars were shipped a day later. Those two cars were refused because not shipped within the five days.

Rule No. 4 of the grain dealers' association provided that it should be the duty of both buyer and seller on day of trade to mail to each other a confirmation in writing setting forth the specifications as agreed upon in the original articles of trade, and that upon receipt of such confirmation the parties should carefully check all specifications and upon finding any differences should immediately notify the other party by wire, except in case of manifest errors when notice by return mail

should be sufficient. Rule No. 1 speaks of the "original articles of trade, whether conducted by wire or by mail." Another provision was:

"When either of the confirmations contains provisions at variance with the conditions expressed in the card bid, or other written or printed bid, the provisions of the said card, or other written, or printed bid, shall govern, except when both parties to the contract shall waive the irregularity, by signing the confirmation, in which event, the confirmation thus signed, shall be understood to express the terms of the contract."

The confirmation was not signed by the plaintiffs. It is contended that for this reason the terms of the bid as telegraphed must govern.

This appears to be the situation: The telegram together with the rules of the grain dealers' association constituted an order to ship the grain within ten days; the letter of confirmation sought to vary this by requiring the shipment to be made within five days. This attempted variance was not recognized in the way provided for by the rules, which was by wire or signing the confirmation, and hence, the matter was left in precisely the condition as if it had been a written order for a ten-day shipment.

If there be any question about the meaning of the words "card or other written bid," we think it may be settled by holding that the telegram was within this description. (*The State v. Oakland,* 69 Kan. 784, 77 Pac. 694.)

*Strong v. Ringle,* 96 Kan. 573, 152 Pac. 631, is referred to as decisive of this case, but that decision involved oral negotiations only over the telephone and written confirmation, as plainly stated in the opinion. Those engaged in the grain business had adopted "a method of rendering the result of their oral negotiations definite and certain." The only difference in talking face to face and over the telephone is the difference in hearing correctly. Telegrams are always received in written or typewritten forms and are practically the same as a written or printed order. *Hayes v. Cardwell,* 107 Kan. 556, 192 Pac. 757, also involved a telephone order, with written confirmation.

These parties, engaged in the grain business, had mutually agreed to abide by the printed rules of the trade, which entered into the contract, unless otherwise expressed, the same

as the statutes of the state enter into a contract made between merchants engaged in business.

The matter presented is simply and solely one of construction and we are unable to find any other justifiable conclusion from the telegrams, rules and correspondence than the one already indicated.

The judgment is affirmed.