No. 25,250.

The State of Kansas, ex rel. Charles B. Griffith, Attorney-general, *Plaintiff*, v. The Pawnee and Arkansas Valley Drainage District et al., *Defendants*.

SYLLABUS BY THE COURT.

Quo Warranto—*Validity of Organization of Drainage District—Insufficient Description of Property Included in Notice of Hearing Before County Commissioners*. In a proceeding before a board of county commissioners for the organization of a drainage district, the notice of the hearing of the petition provided for in R. S. 24-404 must contain a description, by boundaries or otherwise, of the real property to be included within the proposed district.

Original proceedings in quo warranto; Albert Watkins, referee. Opinion filed June 7, 1924. Judgment for plaintiff.

*C. B. Griffith,* attorney-general, *J. G. Egan,* assistant attorney-general, *Wm. R. Smith,* of Topeka, *Wm. Osmond,* of Great Bend, *H. S. Rogers, G. W. Finney,* and *R. E. Peterson,* all of Larned, for the plaintiff.

*Blaine Roberts,* of Larned, *Carr W. Taylor,* and *John H. Connaughton,* both of Hutchinson, for the defendants.

The opinion of the court was delivered by

Harvey, J.: This is an original proceeding in quo warranto to determine the validity of the organization of the Pawnee and Arkansas Valley drainage district, the validity of the election of certain directors in such district, and the right of the drainage district to incorporate within its boundaries certain lands which it is claimed would not be benefited. After the issues were joined it was referred to a commissioner, who has made findings of fact and conclusions of law and recommend judgment for defendant. The plaintiff has taken exceptions to certain findings of fact and conclusions of law made by the referee and to his refusal to make certain findings requested, and moved for judgment in its favor. The defendant moves the court to approve the findings of the referee and for judgment for defendant.

On January 16, 1923, a petition was filed with the county clerk,

addressed to the board of county commissioners, for the incorporation of a drainage district, which contained the requisite number of signers and a description of the territory proposed to be included within the boundaries of the district. A part of this territory. was within the city limits of Larned. On February 5 the county commissioners made an order fixing February 14 as a time for hearing the petition, and directed the county clerk to cause a notice of the hearing to be published. Attempting to comply with this order, the county clerk caused to be published the following notice:

"Notice is hereby given that a petition was presented to the commissioners of Pawnee county, on the 5th day of February, 1923, asking for the formation of a drainage district in the territory adjacent to the Pawnee river and the Arkansas river and near the city of Larned, Kansas, and that there will be a hearing on said petition on the 14th day of February, 1923, at 10 o'clock a. m., in the commissioners' room at Larned, Kansas.

(Seal.) ·CHAS. CARLSON, *County Clerk.*"

On February 14 a hearing was held on the petition by the county commissioners, who made an order organizing the drainage district in accordance with the prayer of the petition, and fixed a date for the election to choose directors.

Plaintiff's first contention is that this notice was insufficient to give the county commissioners jurisdiction to hear the petition, for the reason that the notice does not describe the land proposed to be included within the drainage district, and that the notice is misleading in that it speaks of the territory to be included in the district as being "near the city of Larned," when in fact a part of it was within the city.

It seems to be well settled that in the formation of a district such as this the steps provided by law necessary to be followed in order to give the county board jurisdiction to make the order creating the district must be substantially complied with. The statute (R. S. 24-403) provides for the filing of the petition with the county commissioners and what it shall contain. The statute then provides for notice as follows:

"That whenever a petition in conformity to the next preceding section signed by not less than two-fifths of the taxpayers residing within the boundaries of the proposed district shall be presented to the board of county commissioners of any county praying that a drainage district be incorporated and organized, it shall be the duty forthwith of such board of county commissioners to fix a time for the hearing of such petition, and to cause the county clerk to give notice thereof by one publication in some newspaper published and of general circulation in the county at least five days before the day fixed for the hearing." (R. S. 24-404.)

Since the statute does not state specifically what shall be contained in the notice, the question is, Must the notice contain a description, by boundaries or otherwise, of the real property which it is proposed to include in the drainage district? In an exhaustive note on the formation of drainage districts in Annotated Cases, 1915C 17, it is said:

"Notice in some form to landowners to be affected by the formation of a drainage district is essential, and is universally provided by the statutes permitting the organization of such districts, such provisions being held to be mandatory and jurisdictional." (Citing authorities.)

In 9 R. C. L. 637 it is said:

"In the establishment of a drainage district, the matter as to which the property owner is entitled to notice is that his land is included within the body or district of land that is to be subject to general assessment for such improvement. Notice in some form to landowners to be affected by the formation of a drainage district is essential and is almost universally provided by the statutes, such provisions being held to be mandatory and jurisdictional. The requirement of notice may be read into the statute providing for the formation of a district."

Pertaining to the proceedings for the establishment of drainage districts it is said in 19 C. J. 641: "A petition is the foundation of the jurisdiction of the court, county board, or other tribunal in drainage proceedings." And referring to persons entitled to notice of the hearing of the petition it is said: "Notice must be given to all landowners whose lands will be affected by the improvements." (p. 648.) As to the form and requisites of the notice it is said: "The notice must be such as will reasonably apprise the landowner of the pendency of the proceedings, so as to give him an opportunity to be heard on the merits. . . . The notice must describe the land to be affected." (p. 650.)

This court has heretofore been called upon to construe similar statutes pertaining to the organization by the county commissioners of cities of the third class and of rural high-school districts. To organize a city of the third class the statute (R. S. 15-102) provides, among other things, that when the petition for organization is presented those interested shall accompany it with proof that the petition has been published in some newspaper printed in the town or village at least once each week for three consecutive weeks: "Provided, if no newspaper be published in the said town or village, then ten printed notices shall be posted conspicuously in said town or village in each instance where publication in a newspaper is required by the provisions of this section."

In the organization of the city of Oakland, there being no newspaper published in the town or village, typewritten notices were posted, and the question arose what the notices must contain. In *The State v. Oakland,* 69 Kan. 784, 786, 77 Pac. 694, it was said:

"What must the notices contain? Because the provision for the newspaper notice require the petition to be printed in full, it is argued that even the names of the petitioners must be printed in the newspaper, and that the notices to be posted, if no newspaper be published in the town or village, must contain all that is required in the newspaper publication. Passing the question whether the names of the petitioners are required in a newspaper publication, we remark that *the statute does not provide that the posted notices shall be the same as that published in the newspaper.* The essential feature and purpose of the posted notices is to advise the electors of the town or village that a petition for the organization of a city will be presented to the board of county commissioners at a specified time. *It should contain a statement of the metes and bounds of the proposed organization* and the number of inhabitants within those limits, so that those who would be affected by the action of the board might having warning and an opportunity to oppose or favor the incorporation. The application to be made to the board of county commissioners, or rather the action to be invoked, was the important thing, and that was fully stated in the notices posted. As the statute does not prescribe a particular form, and as those posted fully subserved the legislative purpose, they are deemed to be sufficient."

In *Schur v. School District,* 112 Kan. 421, 210 Pac. 1105, involving the organization of a rural high school, a question arose as to the sufficiency of the notice. The statute did not provide what the notice should contain. It reads as follows:

"Notice of all such elections shall be given at least twenty-one days prior to the date of such election by posting printed or typewritten notices on the door of each schoolhouse in the proposed district and by publishing the same twice in some newspaper published in each county in which the proposed district or any part of the proposed district lies." (R. S. 72-3502.)

The court said:

"Observe the text: Notice to whom? To the legal electors concerned. Who are they? Must all the voters of the county concern themselves with such notice? Must they go to the office of the board of county commissioners and examine the petition to see whether they and their lands and property are affected by the election? We think not. They are entitled to depend on the information given them in the election notice itself. . . . A notice of a school-bond election can hardly be said to be a notice at all unless it apprises the people concerned of their interest in the matter. Very different would it be if the district was already organized before the bond election was called. In that case a notice briefly advising the electors of rural high-school district No. 1, Ottawa county, of the bond election would be altogether sufficient; but when this notice was given there was no such public institution as rural

high-school district No. 1, Ottawa county, in existence; the same notice which called for the bond election called upon the electors concerned to vote 'yes' or 'no' on the establishment of such public institution. In *The State v. Bentley,* 80 Kan. 227, 101 Pac. 1073, the rule touching the necessity for strict regularity in the matter of notices of special elections was emphasized, and earlier cases were there cited, including *The State, ex rel., v. Echols,* 41 Kan. 1, 20 Pac. 623, in which it was said: 'There is no more important step in an election than the giving of notice.'" (pp. 424, 425.)

It has been repeatedly held in this state that the statutory notice is essential to the validity of special elections. (See *Chanute v. Davis,* 85 Kan. 188, 116 Pac.. 367, and cases there cited.

The statutes for the organization of cities of the third class, of rural high-school districts and of drainage districts are similar in these respects; each is for the creation of a new corporate or quasi-corporate body. The proceeding is initiated in each .instance by petition to the board of county commissioners, and notice of the hearing before the commissioners must be given. In each instance the statute does not specifically state what the notice must contain (except where the notice for the organization of cities is published in the newspaper). In the organization of a city we have said, "It should contain a statement of the metes and bounds of the proposed organization." (*The State v. Oakland,* supra.) And in the organization of a rural high-school district we have held that it is essential to a valid notice that the land be described by metes and bounds or otherwise in the notice. (*Schur v. School District,* supra.) The same rule applies to this case, and for the same reason. Where the creation of a new district formed out of such territory as is benefited, its boundaries is an important matter. Whether property owners are to be taxed for its support is important to them as well as to others in the district; the county commissioners must have jurisdiction before a valid order creating the district can be made, and this can be had only upon notice to the property owners. If this notice is given by publication the notice itself must contain the names of the parties or the description or boundaries of the land affected by the new organization. In the ordinary publication notice in an action to quiet title or to foreclose a mortgage, where the names of the parties are given, an error in the description of the real property (*Sharp v. McColm,* 79 Kan. 772, 101 Pac. 659), or a total lack of description (*Allison v. Whitaker,* 81 Kan. 706, 106, Pac. 1050), is not so important, for there reliance is had upon notice to a person named. For this kind of a proceeding to publish with ac-

curacy the names of all persons affected would be difficult, hence the description or boundaries of the real property to be affected is deemed sufficient on the theory that one is presumed to know the description of his own property, and notice that his property is to be affected by a new tax-levying quasi corporation is notice to him; but where the notice contains neither the names of the persons nor the description or boundaries of the property to be affected, it conveys no definite information to anyone and is insufficient to give jurisdiction.

In *Railroad Co. v. Leavenworth County,* 89 Kan. 72, 130 Pac. 855, relied upon by defendant, the attack upon the organization of the drainage district was collateral, being by a property owner in the district who by its conduct had become estopped from questioning the validity of the organization proceedings. We have no such situation here. The attack is direct by the state and there is no estoppel interposed.

The order of the board of county commissioners of February 14, 1923, purporting to organize the drainage district, was made without jurisdiction and is void. It necessarily follows that all subsequent proceedings, including the attempted election of directors, and the attempted voting of bonds, are void and without effect. Hence it is not necessary to decide other questions argued by counsel.

Judgment will be entered for plaintiff.