No. 32,814

THE STATE OF KANSAS, ex rel. CLARENCE V. BECK, Attorney General, *Plaintiff*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF ALLEN et al., *Defendants*.

(57 P. 2d 450)

Opinion filed May 9, 1936.

*Clarence V. Beck,* attorney general, *Theo. F. Varner,* assistant attorney general, *L. T. Cannon,* of Humboldt, and *C. J. Peterson,* of Iola, for the plaintiff.

*J. C. Edwards,* county attorney, for the defendants; *G. R. Gard,* and *Stanley E. Toland,* both of Iola, of counsel.

The opinion of the court was delivered by

WEDELL, J.: This is an original action in the nature of quo warranto brought in the name of the state, on the relation of the attorney general, for a declaratory judgment, and seeking to have

adjudged illegal a special election held in Allen county at the general election on November 6, 1934, at which there was attempted to be submitted to the voters of Allen county the question of the adoption of the county road unit system in said county, and ousting the board of county commissioners of Allen county from any privilege, franchise, right or jurisdiction over the township roads in the county of Allen, the road funds, road and bridge funds and special motor-vehicle-tax funds of all of the townships in said county of Allen.

The parties have submitted the action upon issues joined by the pleadings and an agreed statement of facts. The agreed facts are lengthy and are appended to the opinion and made a part hereof.

Plaintiff first contends the election was illegal, for the reason the county clerk of Allen county failed to give. any notice thereof in the manner provided by law.

Statutes pertaining to the county road unit system in effect in 1934, when these proceedings occurred, were R. S. 1933 Supp. 68-516, 68-516a, 68-517 and 68-518. No complaint is made relative to any failure to comply with the initiatory procedure for the adoption of a county road unit system prescribed by R. S. 1933 Supp. 68-516. That statute concludes with the requirement that the board of county commissioners shall submit the question of the adoption of such system to an election within the county. Neither it nor any other statute pertaining to the subject prescribes the nature or length of notice for such election. Plaintiff urges, although this election was held in conjunction with the 1934 general election, it was nevertheless a special election and an official ten days' notice was required as provided by R. S. 25-105, which reads:

"It shall be the duty of the county clerk, and he is hereby required, to give public notice by publication in the official county paper, at least fifteen days before the holding of any election, except as otherwise provided by law, of the time of holding such election, and the officers at that time to be chosen, except in the case of special elections, when ten days' notice shall be given; if no official county paper be published in such county the notice shall be published in some paper having circulation in such county."

Plaintiff insists if that statute is not applicable as to notice required for this election, then the county road unit system law is unconstitutional. This contention is grounded on the theory there must be a specific provision for notice of an election. The difficulty with that contention is every law providing for an election necessarily implies the giving of a reasonable official notice. As stated, the law required the county commissioners to submit the question

involved to the electors. The giving of notice of the election was therefore implied. In 59 C. J. 973 the rule is stated thus:

"That which is implied in a statute is as much a part of it as that which is expressed. A statutory grant of a power or right carries with it, by implication, everything necessary to carry out the power or right and make it effectual and complete, but powers specifically conferred cannot be extended by implication."

See *Gilbert v. Craddock*, 67 Kan. 346, 72 Pac. 869; *Tatlow v. Bacon*, 101 Kan. 26, 165 Pac. 835.

The failure to provide for notice does not render the road law itself unconstitutional. In the Tatlow case this court said:

"It has already been determined that a statute is not invalid merely by reason of the fact that it does not expressly provide for notice and hearing. It may be implied by the courts unless the language of the statute excludes the theory that notice and hearing are necessary. (*Gilmore, County Clerk v. Hentig*, 33 Kan. 156, 5 Pac. 781; *Railroad Co. v. Abilene*, 78 Kan. 820, 98 Pac. 224.)" (p. 28.)

It therefore follows that although R. S. 25-105 may not be applicable with reference to the necessary notice for this election, the county road unit system law is not therefore unconstitutional. Defendants contend the statutes pertaining to the unit system of county roads and R. S. 25-105 are not *in pari materia.* They insist R. S. 25-105 has no application, as it applies to political elections, that is, to the election of public officials. We do not deem it imperative that we decide whether, under the circumstances of this case, it was necessary to give notice of the election in conformity with the provisions of R. S. 25-105. The question here is, Was a reasonable official notice given to the voters of Allen county advising them of the date and issue to be decided at this election?

Defendants assert the question of nature and length of notice rested in the discretion of the county commissioners and that they did not abuse their discretion in this respect. The answer to the first part of this contention is, discretion of the commissioners was not exercised in the premises. They passed the matter of notice entirely to the county clerk. The pertinent portion of the resolution adopted by the commissioners, reads:

"The county clerk of Allen county is hereby directed to take all steps necessary to submit said question to the electors of said county at the next general election."

The nature of the notice relied upon by defendants is contained in paragraph six of the agreed facts. Subparagraphs (a) and (b) of

paragraph six deal with procedural steps prior to the election. They are not pertinent to and cannot be substituted for notice of an election. Subparagraph (c) deals with editorials published on the front page of the Iola *Daily Register,* a newspaper in Allen county. Editorials in a newspaper are not an official notice of an election. Subparagraph (d) pertains to printed placards conspicuously posted at voting stations in each precinct. They contained a review of the initiatory procedure prior to the election relative to petitions for and against the adoption of the county road unit system and the resolution of the commissioners which directed the county clerk to take all necessary steps to submit the question at the next general election. The contents of this placard were printed below another placard, which last placard dealt with the proposed amendment to the constitution relative to the repeal of the prohibition amendment. We do not mean to insinuate that the road proposition was deliberately concealed by this arrangement of the placard. We do think, however, the portion of the placard which dealt with the road system served little, if any, notice of an impending election on the subject of a new road system for Allen county. The voters would normally observe the large heading at the top of the placard which dealt with the prohibition amendment and naturally assume the entire placard dealt with the latter subject.

The twenty-first paragraph of the agreed statement admits the general election notice was given in the manner provided by law but that such notice contained no reference to the submission of the county road unit system. It is clear no official notice was published in the official county paper or in any other paper with regard to the road election. True, there was naturally much discussion in connection with the petitions favoring and opposing the adoption of the new system. The front-page newspaper editorials may have caused more comment and discussion than an official announcement would have elicited. We cannot, however, substitute such unofficial acts for an official announcement which is essential to all elections. Voters are presumed to know the date of general elections, as they are fixed by statute. This is not true of special elections. As to the latter, the voter expects and has the right to receive official notice of the date and issues to be submitted. For this reason it is the general rule, and this court has frequently held, notice prescribing for special elections is mandatory. (*State, ex rel., v. Echols,* 41 Kan. 1, 20 Pac. 523; *Rice v. Robson,* 83 Kan. 252, 111 Pac. 186; *Chanute*

*v. Davis,* 85 Kan. 188, 116 Pac. 367; *State, ex rel., v. Staley,* 90 Kan. 624, 135 Pac. 602; *Schur v. School Dist.,* 112 Kan. 421, 210 Pac. 1105; *State, ex rel., v. Drainage District,* 116 Kan. 291, 226 Pac. 478; see, also, 20 C. J. 95, 96; 9 R. C. L. 990-992.)

While the county road unit system statutes prescribed no definite notice for the election, a reasonable official notice is implied. It was not given and the election was therefore not valid. Having reached this conclusion, it is unnecessary to treat the question raised by plaintiff as to the sufficiency of the vote.

Defendants contend if the notice was insufficient the voters waived such notice by a large participation in the election. The contention is not sound. It requires no lengthy treatment. One fact will suffice to disclose its fallacy. 1,348 electors who voted at the general election did not vote on the road plan. It was not within the power of the electors who voted to waive necessity for legal notice on behalf of those who did not vote. It is clear if those who did not vote had voted against the system it would have been defeated.

While we cannot approve the lack of official notice for the election, there is presented to this court a very vital and practical question of public interest. Of the 7,311 votes cast on the question, 3,960 voters favored and 3,351 voters opposed the adoption of the new system. The county commissioners are at least *de facto* officers in relation to the present management and operation of the county road system in Allen county. Under all the circumstances, would the ouster of the commissioners from the exercise of such *de facto* powers serve any good end or purpose? This is an original action in quo warranto. The question is in a large measure addressed to the sound discretion of this court. *State, ex rel., v. Wilson,* 30 Kan. 661, 2 Pac. 828; *Tarbox v. Sughrue,* 36 Kan. 225, 12 Pac. 935; *Weston v. Lane,* 40 Kan. 479, 20 Pac. 260; *State, ex rel., v. Sullivan,* 44 Kan. 43, 23 Pac. 1054 (mandamus action); *Horton v. Wilder,* 48 Kan. 222, 29 Pac. 566; *City of Topeka v. Water Co.,* 58 Kan. 349, 49 Pac. 79; *State v. Bowden,* 80 Kan. 49, 101 Pac. 654; *Little v. Davis,* 80 Kan. 777, 104 Pac. 560; *State, ex rel., v. Stewart,* 90 Kan. 778, 135 Pac. 1182; *Albach v. Fraternal Aid Union,* 100 Kan. 511, 164 Pac. 1065; *State, ex rel., v. Cannon et al.,* 116 Kan. 325, 226 Pac. 777; *State, ex rel., v. Wyandotte County,* 117 Kan. 151, 230 Pac. 531; *State, ex rel., v. Hutchinson Gas Co.,* 125 Kan. 337, 264 Pac. 44.

In *Little v. Davis,* supra, it was said:

"In at least two cases this court has recognized the principle that the judicial discretion which controls the action is broad enough to determine whether under all the circumstances the relief shall be granted." (p. 782.) Citing *Weston v. Lane,* and *Horton v. Wilder,* both supra.

In *State, ex rel., v. Stewart,* it was held:

"The court, while having authority to render a judgment of ouster, is not compelled to do so, there being nothing to indicate that the condition or welfare of the district could be aided thereby." (Syl. ¶ 3.)

In connection with an attempt to oust officers of a new school district, due to irregularities in the organization thereof, this court, in the case of *State, ex rel., v. Cannon et al.,* supra, said:

"In quo warranto the court is vested with considerable discretion (*Tarbox v. Sughrue,* 36 Kan. 225, 12 Pac. 935; *State v. Bowden,* 80 Kan. 49, 101 Pac. 654), and in view of the appeals, the hearings had on the appeals, and the subsequent notices, hearings and decisions, we conclude that the lack of notice of the original action of the county superintendent is not a good ground for holding the organizations to be void or *for the ouster of the officers of the new districts.*" (p. 328.) (Italics inserted.)

Careful consideration must here be given to the agreed statement of facts. No useful purpose can be served by their restatement. An examination of them, and especially of facts contained in paragraphs thirteen to seventeen, inclusive, is essential. They disclose clearly the confusion, turmoil and some of the ultimate consequences which in all probability would result from the allowances of the remedy sought. The state has, of course, brought this action in good faith in order to have the present status of the road situation in Allen county definitely determined. Under the circumstances there existing this is commendable. In the view, however, which we take of the entire situation, we do not believe this court should, in the exercise of its discretion, employ the prerogatives of the extraordinary remedy of quo warranto. We are further inclined to this conclusion in view of the ready and effective remedy provided by R. S. 1933 Supp. 68-517. The voters of Allen county may themselves abandon this road system and return to the old system if they desire to do so, in accordance with the provisions of that statute.

Generally quo warranto will not lie where there is another plain and adequate remedy. (*State, ex rel., v. Wilson; Tarbox v. Sughrue; City of Topeka v. Water Co.,* (mandamus action); *State, ex rel., v. Wyandotte County; State, ex rel., v. Hutchinson Gas Co.,* all supra; and *State v. Water Co.,* 63 Kan. 317, 65 Pac. 257; *Yeager v. Aikman,* 80 Kan. 656, 661, 103 Pac. 132.)

In the early case of *State, ex rel., v. Wilson,* 30 Kan. 661, 2 Pac. 828, it was held:

"In the present case there are several remedies, some of which at least, are adequate; . . . (5) there is also the remedy of removal by an election by the people every two years." (Syl. ¶ 12.)

In the course of the opinion it was said:

"After an examination of the authorities, we have arrived at the conclusion that, as a general rule, a court having the power to exercise jurisdiction in quo warranto proceedings will not exercise its jurisdiction where some other plain and adequate remedy exists. This, we think, was always the law." (p. 676.)

In the case of *State, ex rel., v. Wyandotte County,* 117 Kan. 151, 230 Pac. 531, this court said:

"Quo warranto is still an extraordinary remedy, and will not lie when other adequate remedy exists. (*State, ex rel., v. Wilson,* 30 Kan. 661, 2 Pac. 828.) Even although there be departures from legal limitations and standards, ouster does not mechanically follow. The court may take a broad view of motives, conduct, situations and circumstances, and of the ultimate consequences of application of the remedy, whether useless, beneficial or harmful." (Citing cases.) (p. 159.)

In the case of *State, ex rel., v. Hutchinson Gas Co.,* 125 Kan. 337, 264 Pac. 44, this court quoted with approval from the case of *Albach v. Fraternal Aid Union,* supra, as follows:

" 'In the facts alleged and the relief prayed for in this action the proceeding in effect is quo warranto. Except in most unusual cases, such an action can only be maintained in the name of the state by its proper legal representative —the attorney-general, or perhaps by the county attorney. And even if so maintained, the relief to be given is to some extent discretionary with the court. (*City of Topeka v. Water Co.,* 58 Kan. 349, 353, 49 Pac. 79.) Where, as most likely in the case at bar, the result would be to wreck an institution that is doing a beneficial and humanitarian work notwithstanding some possible defects in its financial or economic structure, the state's responsible legal representative should consider well whether such action should be instituted (*State v. Bowden,* 80 Kan. 49, 56, 57, 101 Pac. 654), and the court would consider with profound solicitude whether the remedy prayed for was not worse than the evil complained of.' " (p. 340.)

We need not and do not rest this decision solely on the ground another adequate remedy exists in the instant case. That fact, however, is entitled to consideration in determining whether we are warranted in exercising our discretion in favor of an action as drastic as ouster under all the circumstances of this case. In view of all of these considerations we are persuaded the remedy of quo warranto should be denied. It is so ordered.

## AGREED FACTS

"First. That the defendant, the board of county commissioners of the county of Allen, is a body corporate and politic and, as such, exercises all of the rights and powers conferred upon it by the laws of the state of Kansas pertaining to counties and county commissioners. That Joe McKinley, H. V. Adams and W. L. Moon are the duly elected, qualified and acting county commissioners of Allen county, Kansas, and constitute the board of county commissioners of such county. That the defendant, C. A. Hubbard, is the duly elected, qualified and acting treasurer of Allen county, Kansas. That the defendant, Ralph Elarton, is the duly elected, qualified and acting county clerk of Allen county, Kansas.

"Second. That the board of county commissioners of the county of Allen did on the 2d day of October, 1933, pass a resolution adopting the provisions of the county road unit system and did cause to have published said resolution in the Iola *Daily Register* of Iola, Kansas, for three consecutive weeks, the first publication being on October 5, 1933. That said Iola *Daily Register*, Iola, Kansas, is now and had been for more than 52 weeks immediately prior to the first publication of said resolution, a daily newspaper continuously and uninterruptedly published at Iola and of general circulation in Allen county, Kansas, it being also the official county paper of said county.

"Third. That thereafter and within a period of ninety days after the date of the first publication of said resolution as aforesaid, there was filed with the county clerk of Allen county, Kansas, petitions signed by 2,780 qualified electors in said county of Allen, protesting the adoption of the provisions of the county road unit system in Allen county, Kansas. That the signers of said petitions were more than twenty percent of the qualified electors in said county of Allen at the time of the filing of said petitions and at all times prior thereto and after the adoption of the aforesaid resolution.

"Fourth. That because of the protesting as aforesaid, the board of county commissioners of the county of Allen found that said protests were signed by more than twenty percent of the qualified electors of the said county of Allen, and said board did on the 10th day of January, 1934, at a regular day of the January session of the said board, pass a resolution submitting to the electors of Allen county, Kansas, the question of whether or not said county was to have the county road unit system as provided by law which was to be submitted at the next general election. A copy of said resolution so passed by said board at said time is attached to the petition herein as a part thereof, and market 'exhibit A.'

"Fifth. That no notice of the submission of the question of the county road unit system to the electors of Allen county at the general election held in November, 1934, was given under section 25-105, R. S. 1923, the defendants believing and claiming that that section of the statute does not apply to such an election.

"Sixth. That if the electors of Allen county did not waive notice of the submission of said question to a vote of the electors at the general election held on November 6, 1934, then the defendants contend that said electors were legally and properly notified of the submission of said question at said elec-

tion by the following proceedings, which the defendants claim to be sufficient notice, but which claim the plaintiff denies, to wit:

"(a) That within ninety days after the first publication of said resolution on October 5, 1933, persons opposed to the adoption of said county road unit system circulated petitions among the electors of Allen county, Kansas, protesting the adoption of said system and asking that the question be submitted to the electors of Allen county for their decision at an election, which said petitions were signed by 2,780 of such electors.

"(b) That the said board of county commissioners, when the petitions protesting the adoption of said system were submitted to it, found said petitions to be sufficient to require the submission of said question to the electors of Allen county, and it was by said board resolved and ordered that said question be submitted to the electors of Allen county at the next general election, which election would be the general election held on November 6, 1934. That said resolution and order was at that time duly spread upon the commissioners' journal. That the action of the said board of county commissioners was reported in the issue of the Iola *Daily Register,* Iola, Kansas, published January 13, 1934, said report of the action taken by said board being reported in the first column on the first page of said issue of the newspaper. A true and correct copy of the report of said action is exhibit A to the answer, which exhibit is hereby made a part hereof by reference.

"(c) That in the issue of the Iola *Daily Register,* Iola, Kansas, published on November 5, 1934, and delivered as stated in paragraph twentieth hereof, there was printed on the first page thereof, a long editorial regarding the county road unit system, and stating that the same was to be voted upon at the general election to be held on November 6, 1934. Exhibit B to the answer is a true and correct copy of said editorial and is made a part hereof by reference.

"(d) That before the commencement of the said general election there were printed and posted at the voting place in each precinct, placards, each of which contained a copy of House concurrent resolution No. 14, passed at the special legislative session of 1933, and a copy of the resolution of the board of county commissioners of Allen county, Kansas, submitting to the electors at the said general election, the question of the county road unit system. That said placards were conspicuously posted in said voting places and remained posted there until the polls were closed on said election day. That said placards were twenty inches in length and twelve inches in width and easily readable. Exhibit C to the answer is a true and correct copy of the contents of said placard and said exhibit is made a part hereof by reference.

"Seventh. That pursuant to the provisions of law, the county clerk of Allen county, Kansas, before said election was held, properly delivered or caused to be delivered to the proper election officials in each voting precinct, a number of properly printed ballots, including ballots on the question of the adoption of the county road unit system, fully sufficient to meet the demands and needs of all the electors of each voting precinct, and that all of said ballots were in the possession of the said election officials in each voting precinct and ready and available for use at the time of the opening of the polls on said election

day. That at said general election all the electors voting in the first ward in Iola, the second ward in La Harpe, in East Elm township, duly and properly received and voted ballots on the question of the county road unit system, except not to exceed 149 of said electors in the first ward in Iola, 108 of said electors in the second ward in La Harpe, and 35 of said electors in East Elm township, either did not receive ballots on said question or did not vote the ballots which they received to vote on said question. That the number of said electors in each of the foregoing voting precincts which either did not receive ballots on said question or did not vote the ballots which they received to vote on said question, is arrived at by subtracting from the number of votes cast by said electors in each of said voting precincts for governor of the state of Kansas, the number of votes cast on said question, and the number remaining as a result of said process of subtraction, it is agreed, represents the number of said electors in each of said voting precincts which either did not receive ballots on said question, or did not vote the ballots which they received to vote on said question.

"Eighth. That at said general election 8,659 of the electors of Allen county, were present, voted, and participated therein. That said electors cast 7,311 votes for or against the question of the adoption of the county road unit system. That of said votes so cast 3,960 were for and 3,351 against the adoption of said county road unit system.

"Ninth. That the 8,659 electors of Allen county present, voting, and participating in said general election cast for all of the candidates for each of the following offices to be filled at said election the following number of votes:

| | |
|---|---|
| State treasurer, unexpired term | 5,295 votes |
| State treasurer, regular term | 7,090 votes |
| County attorney | 6,723 votes |
| Probate judge | 6,244 votes |
| Coroner | 6,144 votes |
| Clerk of the district court | 6,065 votes |

That there was only one candidate for each of the offices of probate judge, coroner and clerk of the district court which were filled at said election and for which votes were cast as stated in this paragraph.

"Tenth. That the vote cast for secretary of state in recent general elections in Allen county, such as the 1934 general election, is as follows: 1934 election, 7,815 votes; 1932 election, 7,631 votes; 1930 election, 6,125 votes; 1928 election, 7,052 votes; 1926 election, 5,862 votes.

"The population of Allen county during the same period of time was as follows: 1934, 20,174; 1932, 20,256; 1930, 21,272; 1928, 22,774; 1926, 24,155.

"Eleventh. That the votes cast at said election on said question were properly canvassed, tabulated and recorded by the county commissioners and county clerk as provided by law. Thereafter, and on or about November 14, 1934, each township in Allen county, was notified by the county commissioners and county clerk of the adoption of said county road unit system at said election in the form as set out in exhibit B to the petition, which exhibit is made a part hereof by reference.

"Twelfth. That on November 28, 1934, the various townships of Allen county not having complied with the order contained in the resolution of

November 14, 1934, the said board of county commissioners did cause a written notice to be served upon the township boards of said townships, a copy of which notice is attached to the petition herein and marked 'exhibit C' and is made a part hereof by reference.

"Thirteenth. That the board of county commissioners of Allen county instructed the treasurer of Allen county not to pay over to the township treasurers of said townships any moneys from the road and bridge funds of said townships collected or to be collected from levies made by said townships for such purposes or received by him from the special motor-vehicle-tax funds. The county treasurer acted accordingly. That the board of county commissioners has used said funds and also the funds paid to said board by certain townships as hereinafter stated and in the use thereof has abided the provisions of 68-516a, R. S. Supp. 1933, with reference to the use of such funds.

"Fourteenth. That there are twelve townships in Allen county. That the following townships have unqualifiedly delivered and turned over to the board of county commissioners their road machinery and equipment theretofore used by said townships in connection with their road work in their respective townships, to wit: Iola, Geneva, Marmaton and Elm townships.

"That the townships of Carlyle, Cottage Grove, Osage, Salem, Deer Creek and Logan have delivered and turned over to the board of county commissioners their road machinery and equipment theretofore used by said townships in connection with their road work in their respective townships with the restriction that the same be used only in the respective township delivering and turning over said equipment, and that said township designate the persons who are to operate said machinery pending the final determination of this question, and that said machinery and road equipment have been accepted and used by the board of county commissioners on those conditions. That the townships of Elsmore and Humboldt have failed and refused to deliver and turn over to the board of county commissioners any of their road machinery and equipment.

"Fifteenth. That the townships of Cottage Grove, Osage, Geneva, Elm and Elsmore, by their township boards, have ordered delivered and turned over to the board of county commissioners of said county all their road and bridge funds and special motor-vehicle-tax funds.

"Sixteenth. That neither the 1936 budgets of the several townships in Allen county nor the tax levies made by them include sums or levies for road and bridge funds for maintenance and improvement of roads and bridges in their respective townships for 1936. That in its adopted budget for 1936, which was duly submitted to and approved by the state tax commission, as provided by law, Allen county budgeted $90,000 in its road fund and $62,255 in its bridge fund. However, the tax levy of Allen county for the road fund is .16751 mills per $100 assessed valuation, which, if all taxes levied are collected, will produce only $43,067.18 for the road fund; the tax levy of Allen county for the bridge fund is .08019 mills per $100 assessed valuation, which, if all taxes levied are collected, will produce only $20,617.02 for the bridge fund. Allen county may also reasonably expect $36,000 in motor-vehicle-tax funds.

"Seventeenth. That since about December 1, 1934, Allen county has been maintaining and improving the former township roads in said county, consisting of 764.25 miles of roads in addition to the 132 miles of county roads which

it already had under its control. That said board of county commissioners is now and has been ever since about December 1, 1934, exercising authority and jurisdiction over all of the roads in said county except about 80 miles of state highways.

"Eighteenth. That on January 9, 1935, Humboldt township, in Allen county, as plaintiff, filed an action in the district court of Allen county, Kansas, against the same defendants as in this quo warranto proceedings. Said action is civil action No. 17,757, on the docket of said court. In that action said plaintiff sought to litigate the same issues involved in these proceedings. Issues were duly joined. The case was tried on June 17, 1935, and defendants' demurrer to plaintiff's evidence was sustained. Plaintiff's motion for a new trial was argued and overruled on June 18, 1935. On December 20, 1935, notice of appeal and journal entry of judgment were filed in the office of the clerk of this court, and said appeal is docketed as case No. 32,900 on the docket of this court.

"Nineteenth. That there are twenty-four counties in the state of Kansas which are now and have been for some time operating under the provisions of the county road unit system. Plaintiff admits the facts stated in this paragraph to be true, but objects to the same as being incompetent.

"Twentieth. That the issue of the Iola *Daily Register,* Iola, Kansas, published on November 5, 1934, was delivered to the subscribers in the cities of Iola, Humboldt, Gas City, La Harpe, Moran, Elsmore, Savonburg, Carlyle and Geneva on the same day, and that the subscribers in the cities of Mildred, Bayard and Petrolia and on the rural routes did not receive their copies of said issue until on November 6, 1934, the following day.

"Twenty-first. That the proceedings in paragraph 'sixth' hereof, are the only proceedings claimed by the defendants to be sufficient notice of said election, there being no notice of the submission of the question of the county road unit system in the general election notice, which general election notice was given in the manner provided by law.

"Twenty-second. That Allen county has not paid for any of the road machinery and equipment taken over by it from the townships, and plaintiff contends that the defendant board of county commissioners usurps its powers in taking over such property without paying for the same, while said board claims that it is not required to pay for the same when used in the township from which it is taken, and that if not practical to use said machinery and equipment in such township that it has the right to sell the same and use the proceeds realized therefrom for road work and improvement within the township."