No. 33,068

THE CITY OF HOLTON, *Appellant*, v. KANSAS STATE BANK et al., *Appellees.*

(59 P. 2d 41)

Opinion filed July 3, 1936.

*E. D. Woodburn* and *Albert M. Cole*, both of Holton, for the appellant.

*E. R. Sloan, W. Glenn Hamilton, F. A. Sloan, Eldon R. Sloan, Gordon Sloan*, all of Topeka, *F. W. Hobbs*, of Holton, and *Braden C. Johnston*, of Marion, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This action was brought by the city of Holton against the Kansas State Bank of Holton, the bank commissioner and the state banking board of the state of Kansas, to cancel the certificate of reorganization of said defendant bank and to enjoin and restrain the defendants from using or enforcing such reorganization plan and from interfering with plaintiff in pursuing the legal remedies it had as a depositor of said bank before its reorganization. The appeal involves only one question, and that is the constitutionality of chapter 80 of the Laws of 1933 authorizing such reorganization.

This is the third action that has been commenced in Jackson county involving the question of the reorganization of this bank that had failed. The first, as is shown in the opinion in the second case, reported in 138 Kan. 163, 23 P. 2d 605, was brought by certain taxpayers of the county against the board of county commissioners of the county in the nature of a declaratory judgment questioning the right of the board to enter into the reorganization agree-

ment. The trial court, upon a hearing, adjudged the board had such authority. The next action was brought by the city of Holton and three taxpayers to enjoin the county board from entering into the proposed reorganization agreement. The trial court found in favor of defendants, and upon appeal to this court the cause was dismissed because the attorney general or the county attorney is the proper plaintiff to bring such a suit. This was the case of *City of Holton v. Jackson County Comm'rs*, 138 Kan. 163, 23 P. 2d 605, as cited above.

In the case at bar the plaintiff alleged that the attorney general had refused to enter this case or permit the plaintiff to use the name of the state. The plaintiff alleged many irregularities in the attempted reorganization of the bank and many arbitrary and fraudulent acts in connection therewith, which were denied by the defendants, and upon the trial the court found for the defendants "on all issues." From this order and judgment the plaintiff appealed without filing or presenting a motion for a new trial.

The constitutional question was involved in the hearing before the trial court, and of course it was an issue there, but there were certain admissions in the answers of defendants which showed the plaintiff had been a depositor before the bank failure, which would make it an interested party capable of raising a constitutional question, as it is stated in 6 R. C. L. 89, 12 C. J. 760, and *State v. Smiley*, 65 Kan. 240, 69 Pac. 199. So we are inclined, because of the admissions in the answers of the interest of the plaintiff as a depositor of the bank, to hold that if the reorganization law is clearly unconstitutional the plaintiff, as a depositor, might have a right to raise that point and insist upon it on appeal, purely as a matter of law, although the trial court found against the plaintiff on all issues and it filed no motion for a new trial.

The appellant insists that the reorganization provision of chapter 80 of the Laws of 1933 is unconstitutional because it is in violation of section 1 of the fourteenth amendment to the constitution of the United States in that it deprives one of property without due process of law, and also is in violation of article 1, section 10, of the constitution of the United States in that it impairs the obligation of contracts.

Appellant argues first that it has been deprived of its property by reason of the reorganization, and second that its property was taken without due process of law. It cites in this connection, as facts, that

only thirty-five percent of its deposits were made available for its use and sixty-five percent is to be paid in installments over a period of four years if collected. Also, that instead of liquidating the insolvent bank, plaintiff's property is used to reorganize the bank, and without the consent or approval of the plaintiff or an opportunity for a hearing or protest, citing *Gilchrist v. Schmidling*, 12 Kan. 263, and *Balch v. Glenn*, 85 Kan. 735, 119 Pac. 67 (which will be referred to later), and also citing cases from other states and texts on the subject.

It should be stated in the first place that this new law took effect March 1, 1933, and the bank closed on March 4, 1933. From about March 12, 1933, to October 28, 1933, the bank, under the direction of the bank commissioner, conducted a partial and temporary banking business, and on October 28, 1933, the reorganization agreement was signed, and on November 1, 1933, the bank was reorganized with the approval of the bank commissioner and the banking board of the state, and on November 16, 1933, the thirty-five percent was paid to all the depositors, including the plaintiff. In the meantime the double liability was assessed upon all the stockholders and paid by three of them, and all the other stockholders surrendered their certificates of stock to the trustees of the reorganized bank.

Appellant only attacks the reorganization provision of chapter 80 of the Laws of 1933. The reorganization provision is as follows:

"*Provided*, That any such bank and its creditors, while in charge of such deputy, may formulate a plan of reorganization which, if subscribed to in writing by not less than eighty percent in amount of its general creditors, and has been approved by the bank commissioner and the state banking board and filed with the bank commissioner of the state of Kansas, shall be held to be legal and binding upon all general creditors of said bank to the same extent and same effect as if all had joined in the execution thereof."

The rest of this chapter, with unimportant changes, has been in existence since 1897. It provided for the appointment of a receiver for failed banks and outlined the procedure of liquidation.

Appellant mentions as one of its rights of which it has been deprived that of pursuing the stockholders on their double liability. This has been the duty of the receiver since 1897, and besides, that has been done in this case under this new provision to the full extent which either the receiver or a depositor could have accomplished it, by collecting it where possible and taking a surrender of the certificates in other cases. The old law without this new provision has

been several times under consideration in this court. In the case of· *Woodworth v. Bowles,* 61 Kan. 569, 60 Pac. 331, it was held that the law of 1897—

". . . which authorizes receivers of insolvent banks to institute actions for the enforcement of the statutory liability of the stockholders of the bank for equal distribution among its creditors, and which suspends the creditor's right, previously given, to proceed for himself against the stockholders, for one year, to await the action of the receiver, cannot be allowed to apply between those who were creditors and stockholders before the time of its taking effect." (Syl. ¶ 4.)

Appellant claims such exception to itself because it was a depositor before the law of 1933 took effect. That matter will be considered later, but aside from that feature the above decision upheld the law of 1897 for the enforcement of the liability of stockholders by receivers instead of its being done by the depositors or creditors. So the rights of all depositors in failed banks to enforce the double liability of stockholders has been suspended since the enactment of the law of 1897.

In the case of *Jeffries v. Bacastow,* 90 Kan. 495, 135 Pac. 582, the constitutionality of the law of 1897 was raised, and in upholding the law it was said:

"Before insolvency the management of a bank is placed by·law in the hands of a body of men, created by statute, designated a board of directors, who act under the supervision and in many respects under the control of the bank commissioner. After insolvency, and in certain other contingencies, this management is exercised by a single official chosen by the bank commissioner, who is called, for convenience and by analogy, a receiver.

"The state, in the exercise of its police power, controls the business of banking in the interest of the public welfare." (p. 497.)

It was also held in the same decision:

"The appointment by the bank commissioner of a receiver for an insolvent state bank, under the banking act of this state, is not a judicial act which must be performed by a court and not by an executive officer." (Syl. ¶ 1.)

It was said in the Gilchrist case, cited by appellant, that—

"Nor does 'due process of law' mean 'a legal proceeding *according to the course of the common law,* nor must there be a personal notice to the party whose property is in question. It is sufficient if a kind of notice is provided by which it is reasonably probable that the party proceeded against will be apprised of what is going on, and an opportunity is afforded him to defend.' " (p. 272.)

In the Balch case, cited by appellant, it was said on page 751:

"Where ample notice is provided which gives to the property owner an

opportunity to have a hearing in any court of competent jurisdiction before his property is affected he is afforded due process of law."

In the case of *Schaake v. Dolley*, 85 Kan. 598, 118 Pac. 80, which was a mandamus case to compel the bank commissioner and state charter board to grant a charter to an applicant, where it had been refused, it was held:

"The business of banking is so intimately related to the public welfare that it properly falls within the scope of the police power of the state exercisable by the legislature." (Syl. ¶ 1.)

The case of *Barber County v. Bank Commissioner*, 113 Kan. 180, 213 Pac. 1054, was a mandamus action against the bank commissioner to compel him to issue a certificate on the state bank guaranty fund, and the writ was denied, the court holding concerning the power and duties of the bank commissioner that—

"The business of banking is so intimately connected with the public welfare that it is subject to legislative regulation, under the police power of the state, and the legislature has ample authority to empower administrative boards or officers to make reasonable rules and regulations in relation thereto." (p. 188.)

Under these authorities it would seem that the placing of the reorganization of a failed bank in the hands and under the control of the bank commissioner and the state banking board is within the police power of the state and in the interest of the public welfare.

A recent decision cited by both parties in this case and strongly relied upon by each as to different propositions therein involved is *Doty v. Love*, 295 U. S. 64, 79 L. Ed. 1303, 55 S. Ct. 558, and it construes a very similar provision for reorganization of failed banks in the laws of Mississippi. Appellant cites and quotes in its brief the portions of the opinion relating to the two features wherein our law differs from the Mississippi law, namely, the requirements that a notice be given before the reorganization is effected, and that the approval of the application for reorganization be made by a court in addition to the bank commissioner or superintendent. Our law makes no requirement of public notice and requires the approval of the state banking board instead of a court of chancery in addition to that of the bank commissioner. Our law requires for the reorganization a subscription of eighty percent in amount of the creditors and depositors, while the Mississippi law requires the approval of seventy-five percent. The following quotations from the opinion of Judge Cardozo in that case are pertinent:

"If we look to the surface of the statute and no farther, there is not even colorable basis for the argument that the constitution is infringed. All that the statute does upon its face is to change the method of liquidation . . . The constitution of the United States does not confer upon the depositors a vested right to liquidation at the hands of a state official. *Gibbes v. Zimmerman*, 290 U. S. 326, 332.

"The argument will not hold that the necessary operation of the statute is to subject dissenting creditors, who may be as many as one fourth, to the will or the whim of the assenting three fourths. The creditors favoring reorganization, though they be ninety-nine percent, have no power under the statute to impose their will on a minority. They may advise and recommend, but they are powerless to coerce. Their recommendation will be ineffective unless approved by the superintendent. Even if approved by him, it will be ineffective unless the court after a hearing shall find it to be wise and just.

. . .

"The argument is made that a cause of action upon contract has been destroyed or given away to the prejudice of depositors in that shareholders have been released from their personal liability in return for a contribution of capital to the regenerated business. This is said to constitute a denial of due process or an impairment of contract within the doctrine of *Ettor v. Tacoma*, 228 U. S. 148, and *Coombes v. Getz*, 285 U. S. 434. The answer is much the same as to the argument last considered. The effect of the release has been to make it possible for the bank to be reopened with the result to the creditors of economies and other benefits that would otherwise be lost." (pp. 70, 72.)

The opinion cites and covers many other federal and state decisions along the same line that are cited by one or the other of the parties to this case, and it also covers the last constitutional proposition raised by the appellant with reference to the provision impairing the obligation of contracts.

As to the necessity of a notice, that question has long been settled to the contrary in this state. It was said in *Tatlow v. Bacon*, 101 Kan. 26, 165 Pac. 835, that—

"It has already been determined that a statute is not invalid merely by reason of the fact that it does not expressly provide for notice and hearing. It may be implied by the courts unless the language of the statute excludes the theory that notice and hearing are necessary." (p. 28.)

This decision was referred to with approval in the recent case of *State, ex rel., v. Allen County Comm'rs*, 143 Kan. 898, 57 P. 2d 450.

In order that we be not confined to theories only it may be well to state that the counter abstract shows that a public meeting of depositors was called, which was attended by about a thousand people, including two of the city commissioners, and later, on special invitation, the other commissioners came to the bank to talk over

the matter. So the city officers cannot well be heard to complain of suffering a loss because the provision did not require a notice to be given.

As to the failure of the provision to require a hearing before a court and the approval of the court to make it constitutional, this contention is answered by the decision above quoted to the effect that the management and supervision of banks and banking in this state is a matter of public welfare, not a judicial affair, but is classed as a police power. In two of the cases above cited this court refused to interfere with the exercise of judgment of the bank commissioner. Besides, in the provision here under consideration, the approval of the state banking board was required in order to make the reorganization agreement effective. Under these decisions the provision for reorganization is not defective because of the failure to require notice to be given or to require that the agreement be approved by a court. As to an opportunity for a protest or hearing, the offices of both the bank commissioner and the state banking board are such as to afford such privilege. They approve or disapprove, and that implies a consideration of the pro and con of the proposition.

Appellant in its argument that this provision impairs the obligation of its contract, insists that the change made in the law by this reorganization plan was in a substantive right and not in a remedial right, admitting that the latter would not render the law unconstitutional whereas the former would. In the Doty case, above quoted, it was held that all the reorganization provision did was "to change the method of liquidation." Liquidation is the object to be accomplished by the entire act, and the reorganization provision merely adds to the receiver plan this different method.

Appellant enumerates eleven different items of impairment of the obligation of its contract, commencing with its right to enforce double liability of stockholders. As stated above, the depositor has not had that common-law right in this state since 1897. The receiver has been performing that duty for nearly forty years. Another is to enforce directors' liability. Another right impaired is the supervision of the court over the assets of the trustees, and many others as to the duties of the trustees. All these have been considered but without any convincing showing of the rights of the depositor over the work of the receiver under the old law and the

trustees under the new provision, both 'under the supervision of the bank commissioner, being substantially different.

One proposition mentioned in a quotation made in the early part of this opinion was purposely passed because it appeared to belong under the subject of impairment of the obligation of contracts. The quotation made an exception to the rule as to obligations of contracts made before the enactment of the law. That exception as a matter of fact applies to this case. The deposits were made by this plaintiff prior to March 1, 1933, when the new law took effect. So if the change made is in a substantive right, it would necessarily be an impairment of the obligation of the contract. The position of the plaintiff as to time is effective, but the change made is not in our judgment in a substantive right—only a different method of liquidation.

We conclude that the reorganization provision in chapter 80 of the Laws of 1933 is not unconstitutional.

The judgment is affirmed.