THE STATE OF KANSAS, *ex rel. C. C. Coleman, as Attorney-general, Plaintiff*, v. THE INTERNATIONAL HARVESTER COMPANY OF AMERICA, *Defendant*.

No. 15,192.

SYLLABUS BY THE COURT.

1. FOREIGN CORPORATIONS—*Violation of Antitrust Laws—Remedies*. Where a foreign corporation is transacting business under a license granted by this state and violates the antitrust laws of this state the license and right to prosecute business within the state may be forfeited and set aside and such corporation wholly ousted from the state, or it may be prohibited from engaging in specific practices which are contrary to the laws of the state.

2. —————— *Quo Warranto—Judicial Discretion—Order Restraining the Doing of Certain Acts*. Where in such a case a corporation has by its conduct become liable to a complete ouster the court may in its discretion make a limited or qualified order of ouster prohibiting certain specific acts, and retain jurisdiction and control of the parties for the purpose of making further orders in the premises should just and proper cause arise therefor in the future.

3. JUDGMENTS—*Parties Affected—Jurisdiction*. This court can not make an order affecting the substantial rights of a foreign corporation in an action to which it is not a party.

Original proceeding in quo warranto. Opinion filed February 12, 1910. Judgment restraining the defendant from doing certain acts.

*Fred S. Jackson*, attorney-general, for the plaintiff; *C. C. Coleman*, of counsel.

*W. E. Stanley, B. P. Waggener, R. R. Vermilion*, and *Earle W. Evans*, for the defendant; *Edgar A. Bancroft*, of counsel.

The opinion of the court was delivered by

GRAVES, J.: On October 2, 1906, the attorney-general filed in this court an original civil proceeding against the defendant, the International Harvester Company of America, a corporation, for the purpose of forfeiting

the "charter, franchises, rights and privileges and corporate existence of the defendant within the state of Kansas" on account of its violations of the antitrust laws of the state, being chapter 257 of the Laws of 1889, chapter 265 of the Laws of 1897, and chapter 293 of the Laws of 1899.

On October 13, 1906, he filed an information against the defendant charging it under the criminal provisions of the foregoing statutes, and it was convicted in the district court of Shawnee county upon seventy-five counts. A fine was assessed against it in the aggregate sum of $12,000. From that sentence the defendant appealed to this court, where the judgment was affirmed. (*The State v. Harvester Co.,* 79 Kan. 371.) The defendant paid the fine and costs.

In the civil action now pending a commissioner was appointed to take testimony and return conclusions of law and fact. The commissioner has made his report and the parties have submitted the controversy upon such report. Among the conclusions of fact found by the commissioner are the following:

"(25) Prior to 1906 the defendant's commission-agency contracts contained a clause by which the agent agreed not to accept the agency for, or be interested in, the sale of any grain binder, header, or harvester, or shocker, husker, and shredder, reaper, mower, stacker, sweep rake, or hay tedder, other than those manufactured by the International Harvester Company; but it also appears from the evidence that the commission-agency contracts used by the defendant since the year 1906 have not contained such clause or any similar one. Since that time, however, the defendant has tried by argument and persuasion to prevent local dealers handling its goods from handling competitive goods, and in a few instances has threatened to take away its goods from local dealers who insisted on handling competitive goods, and in one or two instances, according to the evidence introduced, has done so.

"(28) Attached to the commission-agency contract of the defendant was a price list giving the prices at which the agency should account to the defendant when

the goods were sold. This list contained what are known as cash and time prices. If the agent sold goods so as to obtain cash for them, or sold goods so that payment would be made for them on October 1 following the harvester season, the price he paid in accounting to the defendant was less than if he sold the goods on a long-time note.

"(45) The evidence shows that there is a lively competition between local dealers in selling the defendant's goods, as to the mechanical merits, durability and efficiency of the several different kinds of harvesting machines; that is to say, a dealer having the Deering line in a certain town competes energetically and actively with an agent having the McCormick line in the same town. Each tries to sell as many machines as possible, but the evidence also shows that there is no substantial competition as to prices between the different lines of harvesting machines sold by the local dealers of the defendant company.

"(60) It is apparent from the evidence that the International Harvester Company of New Jersey acquired by purchase six or more of the brands of harvesting machinery (including the brand formerly manufactured and sold by the defendant) which, prior to 1903, had been sold in Kansas in active competition with each other; and that the effect of its so acquiring the same has been to fix and control the wholesale prices of such brands of machinery in the state of Kansas. It is further apparent from the evidence that the purpose of this merger was to reduce operating expenses and decrease competition.

"(61) The practical effect of this merger and the connection of the defendant with the International Harvester Company of New Jersey has been to regulate and control the retail and wholesale prices of harvesting machines in the state of Kansas, and to secure to the defendant approximately eighty-five per cent of this business within this state."

In addition to these findings the parties stipulated as to the general scope of a decree which would be mutually satisfactory. The attorney-general, while insisting that the facts would sustain a decree of complete ouster of the defendant from transacting business in the state, was apparently of the opinion that the in-

terests of the public might be best subserved by a quali-
fied decree, and upon this subject he makes use of the
following language:

"So strong is this monopoly that the testimony in this
case discloses that its power to regulate and control
the price of machinery throughout the civilized world
where such machinery is used has a strong if not con-
trolling force in the fixing of prices and the regulation
of trade in such commodities.

"The commodities of its manufacture and sale are a
necessity to the people of this state.  Any decree of this
court which would interfere in any way with the ability
of the dealers in implements or the farmers of the state
to obtain such machinery as is necessary to enable them
to care for the crops of the state must be most disas-
trous indeed.  On the other hand, the continued control
of the prices of such machinery and of the supply
thereof by the harvester trust is clearly illegal, and will
ultimately result in great injustice and harm to the
people of the state."

The defendant, of course, was satisfied with any de-
cree which would not go to the full extent of severity
which under the facts would be justifiable.  Moved by
these considerations the parties stipulated that a decree
might be entered the general scope of which is shown
in the following memorandum:

"The defendant should be and is prohibited and
ousted from the right to use exclusive contracts with its
agents and dealers and from requiring such dealers not
to handle or sell any goods or implements of the nature
furnished by others than the defendant, and from mak-
ing any unfair discrimination in the sale of its goods in
this state against any section, community or city, or
between persons, for the purpose of destroying compe-
tition.  The court finds that the volume of defendant's
business in this state in harvesting machines is suffi-
ciently large to make it of public consequence and there-
fore subject to regulation.  The court makes no finding
as to the reasonableness or unreasonableness of the
prices at which defendant sells its goods in Kansas, nor
as to the propriety of restricting local agents to the sale
of a single line of its harvesting machines, but it is
ordered that should these matters be hereafter pre-
sented by complaint the same may be considered."

The court has been favorably impressed with the suggestion of the attorney-general and is inclined to adopt in its main features the decree agreed upon by the parties, reserving, however, the right to consider hereafter upon complaint any violations of the decree or other violations of the law.

In the second count of the petition the state claims that the defendant should be required to pay an additional charter fee to the state. The defendant pays to the state a charter fee upon a capital of $1,000,000. The International Harvester Company of New Jersey has a capital of $120,000,000. It is claimed that the New Jersey company transacts business in this state through the defendant; that these two companies are so united and merged in interest as practically to constitute but one corporation, and by this means the state is deprived of a large sum which is justly due it. Upon this subject the commissioner made a finding of fact which reads:

"The International Harvester Company of New Jersey and the International Harvester Company of America, defendant herein, are separate and distinct organizations, but all the capital stock of the defendant, except nine shares held by its nine directors, respectively, was acquired about September 30, 1902, and has ever since been held by three stockholders of the International Harvester Company of New Jersey, in the interest of all the stockholders of said last-named company as a class; but so far as the evidence discloses the only relation existing between the defendant company and the International Harvester Company of New Jersey (aside from a community of interest among their respective stockholders as herein mentioned) is shown by the contract existing between said companies and set out in full in the answers to the interrogatories submitted by the plaintiff and marked 'Exhibit B,' which contract establishes the relation of purchaser and jobber on the part of the defendant, and of manufacturer and seller on the part of the International Harvester Company of New Jersey, of agricultural and harvester implements and machinery."

In addition to this it may be said that the New Jersey

The State v. Harvester Co.

corporation is not a party.to this proceeding and is not before this court, either voluntarily or otherwise. The evidence was all taken *ex parte,* so far as that company is concerned, and therefore is not binding upon it.

The state insists that the defendant is for all practical purposes the same as the New Jersey company, but in view of the findings of the commissioner and the evidence upon which these findings are based we are unable to concur in this conclusion. It is claimed that the stockholders of the New Jersey company own all the stock of the defendant, but we do not understand that when the same persons own all the stock in two or more corporations such corporations thereby lose their separate identity and become merged into each other. (*A. T. & S. F. Rld. Co. v. Cochran,* 43 Kan. 225; *A. T. & S. F. Rld. Co. v. Davis,* 34 Kan. 209; *Pullman Car Co. v. Missouri Pacific Co.,* 115 U. S. 587; *Conley v. Mathieson Alkali Works,* 190 U. S. 406; *Peterson v. Chicago, Rock Island & Pac. Ry.,* 205 U. S. 364.)

If there is anything due the state on account of a charter fee from the New Jersey company the debt is one for which that company, and not the defendant, is liable; but in this action the court, not having jurisdiction over the New Jersey corporation, can do nothing in the premises.

As to the first count the court finds that under the evidence a complete forfeiture of the defendant's charter and right to transact business within the state of Kansas would be justifiable, but it does not deem such an order necessary or expedient at this time. It finds that the volume of business in harvesting machinery transacted in this state by the defendant is sufficiently large to make it a matter of public concern and a proper subject for regulation. It is therefore ordered that the defendant be, and it is, prohibited from using exclusive contracts with its agents and dealers in this state restraining or restricting them from handling or selling goods or implements of the nature sold by the defend-

ant in this state other than those obtained from the defendant; and it is restrained and prohibited from making any unfair discrimination in the sale of its goods in this state against any section, community or city or between persons for the purpose of destroying competition.   No finding is made as to the reasonableness or unreasonableness of the prices at which the defendant sells its goods in this state, nor as to the propriety of restricting local agents to the sale of a single line of harvesting machines.   The right is reserved to make any further order in the premises hereafter which upon complaint and adequate showing may appear to be just and proper.

The costs of this proceeding are taxed to the defendant.