## McKINNEY et al. v. KANSAS NATURAL GAS CO.

## FIDELITY TITLE & TRUST CO. v. KANSAS NATURAL GAS CO. et al.

(District Court, D. Kansas, First Division. June 5, 1913.)

1. COURTS (§ 497*)—PRIORITY OF JURISDICTION—SUITS IN REM OR QUASI IN REM.

The commencement of a suit, the object of which is to affect specific real or personal property, and where in the progress of the litigation the court may be compelled to assume the possession and control thereof, effectually withdraws this property from the authority of other tribunals, although there has been no actual seizure before a second suit is instituted in another court; and the rule applies with equal force when the objects of the two suits are different.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1386, 1397, 1398, 1404–1406; Dec. Dig. § 497.*]

2. COURTS (§ 489*)—JURISDICTION OF STATE COURT—APPOINTMENT OF RECEIVER—FOREIGN CORPORATION.

Under Gen. St. Kan. 1909, § 1728, which authorizes a court to dissolve a domestic corporation which abuses its corporate privileges, or, in case a dissolution is not necessary or advisable, to appoint receivers to manage the corporate property until the abuses are corrected, and section 1724, which provides that foreign corporations authorized to do business in the state shall be subject to the same provisions and judicial control as domestic corporations, a state court may appoint receivers of the property of such a foreign corporation, so far as situated within the state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1324–1330, 1333–1341, 1372–1374; Dec. Dig. § 489.*]

3. COURTS (§ 489*)—POWER TO APPOINT RECEIVER—FOREIGN CORPORATION—KANSAS STATUTES.

Under the Kansas Anti-Trust Act (Gen. St. 1909, § 5146), which provides that every person or corporation within or without the state, violating its provisions within the state, shall be denied the right to do business in the state, and authorizes the enforcement of such provision "by injunction or other proceeding," a state court has power to appoint receivers of the property within the state of a foreign corporation charged with violation of the act, and under the state practice such remedy is not precluded because the legal relief of ouster is sought in the action.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1324–1330, 1333–1341, 1372–1374; Dec. Dig. § 489.*]

**4. COURTS (§ 366*)—FEDERAL COURTS—AUTHORITY OF DECISIONS OF STATE COURTS.**

Such remedial procedure is essentially one of local law, and where the Supreme Court of the state has decided that the power exists, as incidental to the enforcement of the statute, the question should be held thereby concluded by a federal court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. § 366.*]

**5. COMMERCE (§ 80*)—INTERSTATE COMMERCE—INTERFERENCE WITH BY STATE.**

The appointment by a state court of a receiver of the property within the state of a foreign corporation engaged in interstate commerce does not amount to an unlawful interference with the right of such corporation to transact interstate commerce.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 80.*]

**6. CONSTITUTIONAL LAW (§ 169*)—COURTS (§ 489*)—OBLIGATION OF CONTRACTS —IMPAIRMENT BY STATE.**

A state law, authorizing a court of the state to appoint receivers of the property of a corporation, is not unconstitutional, as impairing the obligation of contracts, as against a mortgagee, as depriving it of the right to foreclose its mortgage in some other court.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 474, 476, 478–481, 502, 511–514, 522; Dec. Dig. § 169;* Courts, Cent. Dig. §§ 1324–1330, 1338–1341, 1372–1374; Dec. Dig. § 489.*]

In Equity. Suits by John L. McKinney and the Fidelity Title & Trust Company against the Kansas Natural Gas Company and the Delaware Trust Company. On petition of the Attorney General of Kansas and the state receivers of the Kansas Natural Gas Company, praying for delivery of its property into their possession. Petition granted.

John H. Atwood, of Leavenworth, Kan., John S. Dawson, of Topeka, Kan., Chester I. Long, of Wichita, Kan., and O. P. Ergenbright and T. S. Salathiel, both of Independence, Kan., for petitioners.

John J. Jones, of Chanute, Kan., and John F. Philips, of Kansas City, Mo., for receivers appointed by Federal Court.

Charles Blood Smith, of Topeka, Kan., for complainants.

John J. Jones, of Chanute, Kan., for defendants.

MARSHALL, District Judge. In these suits a petition is filed by the Attorney General of the state of Kansas and by the receivers of the Kansas Natural Gas Company, heretofore appointed by the district court of Montgomery county, Kan., for an order from this court directing the receivers heretofore appointed by it of the property of the Kansas Natural Gas Company to surrender the possession of the same to the receivers appointed by the state court.

It appears that the suit which resulted in the appointment of receivers by the state court was instituted January 5, 1912, by the state of Kansas against the Independence Gas Company, the Consolidated Gas, Oil & Manufacturing Company, and the Kansas Natural Gas Company. The petition in substance alleged that the first two defendant corporations were public service corporations organized under the laws of Kansas, and that the Kansas Natural Gas Company was a foreign corporation authorized to transact business in Kansas;

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that the defendants had entered into certain agreements, trusts, and combinations, which were specified in the petition, and were alleged to be in violation of the anti-trust acts of the state of Kansas, and had thereby abused and misused the corporate powers and privileges granted to them by that state; that the two first-named defendants had transferred all of their property alleged to be essential to the discharge by them of their duties as public service corporations, and without authority of law, and that this property, which was described, had become vested in the Kansas Natural Gas Company; that the managing officers of the defendant corporations willfully and intentionally abused and mismanaged the corporate property and business, and thereby caused each of the defendants to pervert its corporate privileges, and that each of the defendants threaten and will continue to abuse and misuse its corporate privileges, unless its said officers be by order of the court removed, or a receiver be appointed to manage the corporate property under the supervision of the court until said abuses are fully corrected. Wherefore it was prayed that an order be made ousting the defendants from the exercise of corporate powers and privileges within the state of Kansas, and that a receiver be appointed to manage the corporate property and business and to wind up the affairs of said defendants.

On January 17, 1912, a motion was filed for the appointment of a receiver of the property of the Independence Gas Company and of the Consolidated Gas, Oil & Manufacturing Company; but this motion was not pressed to a hearing.

On October 7, 1912, John L. McKinney, claiming to be a bondholder under a second mortgage executed by the Kansas Natural Gas Company, and acting in behalf of other creditors similarly situated, filed a suit in this court for the marshaling of the assets of said company and the payment of its debts. He prayed for the appointment of receivers of the property of the company to preserve it during the pendency of the litigation. In form the bill was the usual bill for an administrative receivership. The defendants appeared, admitted the averments of the bill, and consented to the appointment of receivers. Thereupon the court appointed receivers, who qualified and immediately entered into possession of the property. The Fidelity Title & Trust Company, a trustee under a first mortgage of the property of the Kansas Natural Gas Company to secure bondholders, was then permitted to intervene in this suit, and sought the same relief as the plaintiff. By order of this court the receivership theretofore existing was extended to the intervening petition of the Fidelity Title & Trust Company.

On February 3, 1913, the Fidelity Title & Trust Company filed its bill in this court to foreclose a mortgage executed to it, as trustee, by the Kansas Natural Gas Company; the default justifying the suit having occurred after the institution of the McKinney suit. The property mortgaged was situated in part in the Western district of Missouri, in part in the Eastern district of Oklahoma, and in part in the district of Kansas. By a compliance with the conditions prescribed in section 56 of the Judicial Code, the receivers here appoint-

ed have been vested with jurisdiction and control of the property in Missouri and Oklahoma, as well as that within the state of Kansas.

On February 15, 1913, the district court of Montgomery county, Kan., entered a decree in the suit there pending in favor of the plaintiff, and as a part of the adjudged relief appointed R. S. Litchfield and John M. Landon, two of the petitioners in this proceeding, receivers of all of the property of the Kansas Natural Gas Company; and it having been made to appear to the court that the receivers heretofore appointed by this court were in the actual possession of the property of that company, the said receivers appointed by the state court were ordered and directed, in conjunction with the Attorney General of the state of Kansas, to appear in the District Court of the United States and request a delivery of said property to them. In the opinion filed by the judge of the state court, the court said with respect to the corporate defendants in that suit that:

"The relationship of this case to the public is such that complete judgment of dissolution and ouster would punish the public rather than the offending company. A dissolution of the Consolidated Gas, Oil & Manufacturing Company is not advisable, nor would a complete ouster of the Kansas Natural Gas Company be advisable. So that the court will take charge of all the gas business of the Consolidated Company and all the business of the Kansas Natural Gas Company by its receivers, and manage the corporate property and business, protecting the gas consumers and the public until the abuses are fully corrected; and here is presented the question of conflicting jurisdiction. It is brought to the attention of this court in the arguments that receivers have been appointed for all the property of the Kansas Natural Gas Company in the federal court for the district of Kansas, and that such receivers are now in charge. * * * This court cannot enjoin the receivers of the federal court, or render any effective judgment, because the Kansas Natural Gas Company is not in the possession of the property. In a word, this court is powerless to execute its decree herein."

[1] It is this question of conflicting jurisdiction here referred to that is presented now for determination. The general principle involved was declared by Mr. Justice Shiras, speaking for the Supreme Court in Farmers' Loan & Trust Co. v. Lake Street Railroad Co., 177 U. S. 51, 61, 20 Sup. Ct. 564, 568 (44 L. Ed. 667), in these words:

"The possession of the res vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and for the time being disables other courts of co-ordinate jurisdiction from exercising a like power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons. Nor is this rule restricted in its application to cases where property has been actually seized under judicial process before a second suit is instituted in another court; but it often applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in suits of a similar nature, where, in the progress of the litigation, the court may be compelled to assume the possession and control of the property to be affected. The rule has been declared to be of especial importance in its application to federal and state courts."

The different phases of the question have been so frequently before the Circuit Court of Appeals of this circuit and so authoritatively determined that no general discussion seems admissible. Gates v. Bucki, 53 Fed. 961, 4 C. C. A. 116; Merritt v. Steel Barge Co., 79

Fed. 228, 24 C. C. A. 530; Zimmerman v. So Relle, 80 Fed. 417, 25 C. C. A. 518; Sullivan v. Algrem, 160 Fed. 366, 87 C. C. A. 318.

This general principle is not questioned; but it is contended that, where the suits are different in their nature, in their objects, and the rights sought to be enforced, an exception occurs, "and the court that first actually seizes the res and takes possession retains it, notwithstanding a prior suit has been commenced and service made affecting the property." This claimed exception rests on no principle. The nisi prius courts, both federal and state, exercise jurisdiction over the same persons and property within the same territory. They are coordinate in the sense that one is not clothed with control over the other. Established by different sovereignties, the pendency of a suit in the one is no ground for the abatement of a suit in the other, although between the same parties and for the same cause of action. But with respect to suits in rem or quasi in rem, the nature of the proceeding excludes dual action; and this is equally the case if the suits are between different parties and on different causes of action. A rule that property should only be considered in custodia legis when physically seized, or there is an equivalent of physical seizure, would be practicable. The objection to it is that it would frequently entail an unseemly race for possession, and the fact of priority might be involved in uncertain testimony. Further, there are suits in which it is apparent from the beginning that actual possession of the res may be eventually necessary, but where this possession is not initially essential. Such suits can only be effectively proceeded with if the subject-matter of the litigation is not in the meantime removed or changed in condition or ownership by the decrees of other courts, so that when a decree is rendered it will be operative.

These objections seem to have influenced the courts to declare that the commencement of a suit, the object of which is to affect specific real or personal property, and "where, in the progress of the litigation, the court may be compelled to assume the possession and control" thereof, effectually withdraws this property from the authority of other tribunals. Merritt v. Steel Barge Co., 79 Fed. 228, 24 C. C. A. 530. These objections to the rule of determining priority by actual seizure apply with equal force when the objects of the two suits are different.

[2] It is contended with great force that the district court of Montgomery county in the suit first brought had no jurisdiction to appoint a receiver of the property of the Kansas Natural Gas Company, and hence the principle invoked by the petitioners has no basis. If the premise be correct, the conclusion must follow. The argument in support of the premise is that this suit in the state court was based on section 1728 of the General Statutes of 1909; that that section only applies to domestic corporations, which the court is authorized for certain causes to dissolve, but has no application to a foreign corporation, and hence afforded no statutory authority for the appointment of receivers of the property of such a corporation. There are several answers to this contention, each of which seems to me sufficient:

(a) Without questioning that section 1728, by necessary intendment, relates only to domestic corporations so far as it has not been given a

broader operation by some other statutory provision, the question naturally arises as to the effect to be given to section 1724, which provides:

"Any corporation organized under the laws of another state, territory, or foreign country, and authorized to do business in this state, shall be subject to the same provisions, judicial control, restrictions, and penalties, except as herein provided, as corporations organized under the laws of this state."

By section 1728, in case a domestic corporation abuses its corporate privileges and thereby subjects itself to a decree of dissolution, the court is authorized, if a dissolution be not necessary or advisable, and if the abuses can be corrected without dissolution, to appoint receivers to manage the corporate property under the supervision of the court until the abuses be corrected. The judicial control of the court is thus exercised over domestic corporations to correct such abuses. By section 1724, a foreign corporation is subjected to the same judicial control for the correction of the same character of abuses. It is true a foreign corporation cannot be dissolved, as could a domestic corporation; but there is no impediment to the appointment of receivers of the property of such corporation, so far as situated within the state.

[3] (b) The jurisdiction of the state court to appoint receivers does not rest exclusively on section 1728. The Kansas anti-trust act (Gen. Stat. 1909, § 5146), after defining the trusts and combinations prohibited by it, provides:

"Every person, company or corporation within or without this state, their officers, agents, representatives or consignees, violating any of the provisions of this act within this state, are hereby denied the right and are hereby prohibited from doing any business within this state, and all persons, companies and corporations, their officers, agents, representatives and consignees within this state, are hereby denied the right to handle the goods of or in any manner deal with, directly or indirectly, any such person, company or corporation, their officers, agents, representatives or consignees, and it shall be the duty of the attorney general and the county attorney of any county in the state where any violation of this act be committed, or either of them, to enforce the provisions of this section by injunction or other proceeding.  * * * * "

It is not denied that the district court of Montgomery county had jurisdiction of an equitable proceeding under this statute to enforce its provisions by injunction or other appropriate means. The grant of equitable jurisdiction is commensurate with that embodied in section 4 of the federal statute (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3201]) to protect trade and commerce against unlawful restraint and monopoly, commonly called the "Sherman Anti-Trust Act" whereby the several Circuit Courts of the United States were "invested with jurisdiction to prevent and restrain violations of this act." In neither statute is express authority conferred to appoint receivers. The power, if it exists, results from the fact that it is an appropriate method of restraining a violation of the statute. That the power exists with respect to violations of the federal statute has been settled by the court of last resort. U. S. v. American Tobacco Co., 221 U. S. 106, 31 Sup. Ct. 632, 55 L. Ed. 663; U. S. v. U. P. R. R. Co., 226 U. S. 61, 33 Sup. Ct. 53, 57 L. Ed. ——. This being so, it must follow that the district court of Montgomery county had ju-

risdiction to apply the same means to effect the same result. The suit in the state court cannot be considered a simple suit of ouster. The abuses of corporate privileges sought to be corrected were violations of the anti-trust act. Under the Kansas statutes legal and equitable relief may be obtained in one action, and the fact that the legal relief of ouster was sought did not so dominate the proceeding as to preclude equitable remedies.

[4] (c) The proper remedial procedure is essentially a question of local law. The methods by which rights are vindicated and violations of law are restrained are, subject to constitutional limitations and in respect to state courts, exclusively within the province of the state. If, contrary to the current of authority, the Supreme Court of Kansas has decided, in a quo warranto proceeding based on an abuse of corporate privilege, that as a means of effectuating the judgment a receiver may be appointed, or an injunction be issued against a continuation of the acts complained of, it is not perceived why the question becomes one of general law, to be decided in this court by a resort to common-law rules. We are not here dealing with rights, but with the means by which such rights are protected and vindicated, and violations of law prevented. By the Constitution of Kansas, it is declared that:

"The Supreme Court shall have original jurisdiction in proceedings in quo warranto, mandamus and habeas corpus."

Neither the Constitution nor any statute in terms confers any jurisdiction on that court to appoint a receiver in a quo warranto proceeding. But in State v. Brewing Association, 76 Kan. 184, 90 Pac. 777, a suit to oust the Brewing Association, a foreign corporation, from doing business in Kansas, that court held that it had the power to appoint a receiver, as it might be necessary to prevent the company from transferring its property and resuming business in an indirect manner, and also for the purpose of subjecting the property to the costs of the proceeding. This jurisdiction was deduced as incidental to the exercise of jurisdiction in quo warranto. In State v. International Harvester Co., 81 Kan. 610, 106 Pac. 1053, the same court held that in a similar suit it had the power to enjoin the defendant from engaging in specific practices which were contrary to the laws of Kansas. The jurisdiction of the district court of Montgomery county in suits of quo warranto, while statutory, is granted in language generally similar. There appears no basis for the distinction between the Supreme Court and the district court as to the incidental power resulting from this grant. The decisions of the Supreme Court of Kansas, I think, conclude the question here raised.

[5] It is next objected that the appointment of receivers by the state court was invalid, for the reason that the Kansas Natural Gas Company was engaged in interstate commerce, and that we have here an exercise of the power of the state of Kansas, acting through the court, over interstate commerce, in violation of the commerce clause of the federal Constitution. It is not claimed, if I understand the argument correctly, that the Kansas anti-trust act, when applied to cor-

porations engaged in interstate commerce, is violative of the federal Constitution, or that it cannot be so construed as to relate to restraints and unlawful combinations respecting intrastate trade, and so given a legitimate operation.    But it is asserted that the seizure of property used in carrying on interstate commerce under the order of a state court acting under a valid statute is an unlawful interference by the state with interstate commerce.    It does not cast any light on this question to limit the contention to statutes to enforce the penal laws of the state.    It must be recognized that interstate commerce corporations may incur obligations, contractual and other, and that such obligations can only be enforced by the action of some court; that if it be a public service corporation it may also owe certain duties to the public, but that there is no necessary incompatibility between the enforcement of the first class of obligations and the discharge of those duties. So in Davis v. Railway, 217 U. S. 157, 30 Sup. Ct. 463, 54 L. Ed. 708, 27 L. R. A. (N. S.) 823, 18 Ann. Cas. 907, it was held that a writ of attachment from a state court might be properly levied on cars of a railroad company used in interstate commerce.    But the question is foreclosed here by the case of Palmer v. Texas, 212 U. S. 118, 29 Sup. Ct. 230, 53 L. Ed. 435, where it was held that the appointment by a state court of a receiver of the property of a foreign corporation engaged in interstate commerce did not amount to an unlawful interference with the right of such corporation to transact interstate commerce.

[8] It is further asserted that, if the Kansas statutes are so interpreted as to authorize the appointment by the state court of a receiver of the Kansas Natural Gas Company, as applied to the mortgages sought to be foreclosed in this court, they are in contravention of section 10, art. 1, of the federal Constitution, which prohibits any state from passing a law impairing the obligation of contracts; and attention is called to the rule that the obligation of a contract includes the means provided by law for its enforcement.    I fail to see the application of this principle here.    If the remedy of the bondholders in this court be suspended while the mortgaged property is in custodia legis by virtue of a suit in the state court, it is suspended because of a general principle of law existing and recognized when the bonds were issued, even if the situation calling for the application of the principle results from a statute subsequently enacted.    The complainants here have the right to pursue their remedy in the court having the prior right to the possession of the property.    An intervention pro interesse suo furnishes an adequate remedy for their protection.    It must be assumed that their rights will be fully recognized by the state court, and that they will be accorded just such priority as they are entitled to.    If not, the proper remedy is by appeal.    When the bonds were issued it was the law that the mortgages could only be foreclosed in a court having the power to seize the property mortgaged, and that, if the property was already in the possession of a court, foreclosure had to be there prosecuted, or else must await the action of that court. So a pending suit to foreclose a second mortgage might temporarily preclude a first mortgagee of the same property from the prosecution

of a subsequent suit to foreclose his mortgage in a different court, but could in no sense be said to impair his contract.

I think the objections to the jurisdiction of the state court to appoint receivers cannot prevail, and that the petition must be granted as to such of the property of the Kansas Natural Gas Company as was situated in the state of Kansas at the time the receivers were appointed by this court, and which was therefore potentially in the custody of the district court of Montgomery county.