No. 33,243

THE GAS SERVICE COMPANY, *Plaintiff*, v. THE CONSOLIDATED GAS UTILITIES CORPORATION, and THE CITY OF WICHITA, Intervenor, *Defendants.*

(65 P. 2d 584)

Opinion filed March 6, 1937.

A. M. Ebright, of Wichita, H. A. Russell, of Topeka, and Robert D. Garver, of Kansas City, Mo., for the plaintiff.

Earle W. Evans, Joseph G. Carey, W. F. Lilleston, Henry V. Gott, all of Wichita, for the defendant; Vincent F. Hiebsch, K. W. Pringle and Forest V. McCalley, all of Wichita, for the intervenor.

The opinion of the court was delivered by

SMITH, J.: This is an original proceeding in quo warranto. By it plaintiff seeks to have defendant gas company ousted from occupying certain streets and alleys in defendant city, now occupied by it for the distribution of domestic gas, and asks that certain resolutions under which the defendant gas company claims to have acquired a franchise to distribute gas in the city be held void. After defendant gas company answered the petition, the city on its own motion was permitted to intervene. The defendant gas company also asked that the city be made a party defendant. Thereupon the plaintiff filed a motion to strike portions of the answers and also a motion for judgment on the pleadings. The action is before this court now for a decision of questions of law raised by these motions. The decision of these motions will settle the controversy.

Plaintiff and its predecessors have for many years owned and operated a gas distribution system in Wichita. There is no question as to the validity of the franchise ordinance under which it is operating. This franchise by its terms requires plaintiff to furnish gas for all purposes to the city and all residents thereof.

In March, 1925, the city granted to a predecessor of defendant a franchise to operate a natural gas distribution plant on certain streets designated therein for the purpose of selling natural gas to industrial consumers only. This franchise ordinance was No. 8724. There is no question in this action as to the validity of this ordinance.

On May 6, 1929, the city amended ordinance No. 8724 by inserting the words "and domestic" in section 1 thereof. Thereby de-

fendant was given the privilege of selling gas to domestic consumers as well as industrial consumers along the streets designated in ordinance No. 8724. This ordinance is No. 10-306. There is no contention in this action that ordinance No. 10-306 is invalid.

After the passage of ordinance No. 8724 the franchise was assigned to the Wichison Industrial Gas Company. This company applied to the public service commission for a certificate of convenience and necessity. The Wichita Gas Company, a predecessor of plaintiff, resisted the granting of this certificate before the commission. When it was granted the Wichita company appealed to the district court of Shawnee county. That court sustained the commission. The gas company then appealed to this court, where the judgment of the trial court was affirmed. (See *Kansas Gas & Electric Co. v. Public Service Com.,* 122 Kan. 462, 251 Pac. 1097.)

After the passage of ordinance 10-306 amending ordinance 8724 so that the Wichison company could sell gas to domestic consumers as well as industrial consumers in the limited territory covered by ordinance No. 8724, the Wichison company applied to the public service commission for a certificate of convenience and necessity to sell domestic gas. The Wichita company resisted this application. After the certificate was granted the Wichita company appealed to the district court of Sedgwick county. That court sustained the commission. From that judgment an appeal was taken to this court, where the judgment of the lower court was affirmed. (See *Wichita Gas Co. v. Public Service Com.,* 132 Kan. 459, 295 Pac. 668.) For the purpose of clarity only, the thirty-seven subsequent enactments will be herein designated as resolutions.

Subsequently the city passed thirty-seven resolutions at different times, each one extending somewhat the territory described in ordinances 8724 and 10-306. Each of these resolutions was read but once before the governing body of the city and was published but once.

The last resolution covered a section of the city a half mile north and south and two miles east and west in the better residential portion thereof. It was passed June 29, 1936. This was resolution No. 11-641.

Subsequent to the granting of the certificates of convenience and necessity already referred to no applications were made to the commission for any further certificates. In October, 1935, defendant, in connection with its acquisition of properties formerly owned by

the Wichison company, filed an action with the commissioner for a certificate permitting the transfer of these properties. Neither the plaintiff nor its predecessor contested the granting of this certificate.

The Wichison company and its predecessors have laid pipe in the streets in the various sections of the city described in the thirty-seven resolutions referred to and are serving customers there.

After the passage of resolution No. 11-641, plaintiff notified defendant that this resolution was without effect and that plaintiff intended to contest the right of defendant to operate in the territory described in it. Immediately after the passage of the last-named resolution defendant proceeded at once to lay its pipe in the territory described.

The controversy arises on account of certain provisions of G. S. 1935, 13-2801. That section provides, in part, as follows:

"The board of commissioners of any city governed and controlled by the provisions of this act may permit any person, firm or corporation to manufacture, sell and furnish, artificial or natural gas, light and heat . . . to the inhabitants . . . and may permit . . . the laying of pipes, conduits . . . and all appliances necessary for the construction and operation of gas . . . plants . . . over and along the streets and alleys of such city, upon the express conditions hereinafter imposed, and not otherwise, in this act, to wit:

"First. All contracts granting or giving any such original franchise, right, or privilege, or extending or renewing or amending any existing grant, right, privilege, or franchise, shall be made by ordinance, and not otherwise.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Sixth. No such right, privilege or franchise shall ever be granted until the ordinance granting the same shall have been read in full at three regular weekly meetings of the board of commissioners, and immediately after its final passage it shall be published in the official city paper once a week for three consecutive weeks; and such ordinance shall not take effect and be in force until after the expiration of sixty days from the date of its final passage. If, pending the passage of any such ordinance or during the time intervening between its final passage and the expiration of sixty days before such ordinance shall take effect, ten percent of the legally qualified voters of such city voting for mayor at the last preceding city election shall present a petition to the board of commissioners asking that such franchise ordinance be submitted for adoption to popular vote, then it shall be the duty of the mayor of such city to issue a proclamation calling a special election for such purpose. . . . If, at said special election, the majority of votes cast shall be for said ordinance and the making of said grant, the same shall thereupon become effective; but if a majority of the votes cast at said special election shall be against the said ordinance and the making of said grant, said ordinance shall not confer any rights, powers or privileges of any kind whatso-

ever upon the applicants therefor, but shall be, *ipso facto*, absolutely null and void.

"Seventh. All contracts, grants, rights, privileges or franchises for the use of the streets and alleys of such city, not herein mentioned, shall be governed by all the provisions of this act, and all amendments, extensions or enlargements of any contract, right, privilege or franchise previously granted to any person, firm or corporation for the use of the streets and alleys of such city shall be subject to all the conditions herein provided for in this act for the making of original grants and franchises."

There is no contention here that when the thirty-seven resolutions to which reference has been made were passed, compliance was had with this section. Plaintiff contends that on account of the noncompliance with this section the resolutions are void and defendant has no right whatever on the streets and alleys of the city on account of these resolutions. Defendant points out a provision of ordinance No. 8724 which followed that part of the ordinance describing the streets upon which the ordinance was to operate. This provision is as follows:

"And also such other streets, alleys, avenues, public places and public ways of and located within the said city of Wichita, as shall by the governing board of the city of Wichita be approved by resolution duly passed, upon application of said grantee, his heirs, successors or assigns."

It is the contention of defendant that the above provision in the ordinance under which it entered the city gave the governing body of the city authority to extend further the territorial limits of the first franchise without any compliance with G. S. 13-2801.

The question of law for decision by this court is whether, by stating in an original franchise that amendments, extensions and enlargements can be made by resolution, a city can avoid the provisions of the statute requiring such extensions, amendments and enlargements to be made by ordinance read in full at three weekly meetings and published for three consecutive weeks, and postponing the effectiveness of such ordinance for sixty days in order that an election may be had if petitioned for, as provided by the statute. Before that question can be settled there are some preliminary questions that require our attention.

The first contention of defendant is that plaintiff has no right to maintain this action. At the outset it may be stated that an action in the nature of quo warranto is the proper remedy to obtain the relief sought. G. S. 1935, 60-1601, provides as follows:

"The writ of quo warranto, and proceedings by information in the nature of quo warranto, are abolished, and the remedies heretofore obtainable in those forms may be had by civil action."

G. S. 1935, 60-1602, provides as follows:

: "Such action may be brought in the supreme court or in the district court in the following cases:

"First, when any person shall usurp, intrude into or unlawfully hold or exercise any public office, or shall claim any franchise within this state, or any office in any corporation created by authority of this state."

The phrase "shall claim any franchise within this state" applies to a franchise granted by a municipality to a public utility. (See *Olathe v. Railway Co.*, 78 Kan. 193, 96 Pac. 42.)

G. S. 1935, 60-1603, provides as follows:

"When the action is brought by the attorney general or the county attorney of any county of his own motion, or when directed to do so by competent authority, it shall be prosecuted in the name of the state, but where the action is brought by a person claiming an interest in the office, franchise or corporation, or claiming any interest adverse to the franchise, gift or grant, which is the subject of the action, it shall be prosecuted in the name and under the direction, and at the expense of such person."

The question is, Does the Gas Service Company have such an interest in the franchise that is the subject of this action as to enable it to bring this action in its own name? In *Telephone Co. v. Telephone Association*, 94 Kan. 155, 146 Pac. 324, this court held that one corporation using the streets of a city was not authorized to bring such an action to test the right of a rival company to use the same streets for a similar purpose. The theory upon which that case was decided was that the rival telephone company did not have such a particular interest in the matter different from that of the general public that it might maintain the action. In later decisions this court has relaxed this rule somewhat. In *Wichita Transportation Co. v. Peoples Taxicab Co.*, 140 Kan. 40, 34 P. 2d 550, defendant was operating a system of taxicabs without having complied with an ordinance of the city with reference to taxicabs. Plaintiff was the regular transportation company operating lines of streetcars and buses. The plaintiff brought an action to enjoin the taxicab company from operating a system of taxicabs in violation of the city ordinance. The pleadings alleged and the trial court in effect found that the plaintiff had a large investment in the city and that to permit the defendant to operate would result in eventual bankruptcy for plaintiff. Under such circumstances this court held that

the plaintiff had sufficient special interest in the matter to maintain the action. The case under consideration has some analogy to the taxicab company case. There is no doubt but that plaintiff would suffer great loss if defendant should be permitted to build a rival gas distribution plant in Wichita. It further appears that should the plan of defendant as outlined in the pleadings be followed, defendant would be able to bring about a situation where it could have its lines built to serve the portions of the city where the business was profitable, and would not be under any obligations to furnish gas to inhabitants of the city where business was not profitable. Such a situation would be ruinous to the plaintiff. It would seem that plaintiff might have an interest in such a question different from the interest of the general public. While this seems closely analogous to the taxicab case this court regards that case as the extreme limit to which it would care to extend the rule permitting actions of this sort to be brought by rival companies. There is, however, another factor in this case which persuades us to hold that plaintiff can maintain this action. The City of Wichita was made a party defendant on its own motion and on the motion of the defendant gas company. There can be no doubt but that the city had a right to bring this action in the first place. See *Olathe v. Railway Co.*, supra. Since the defendant gas company on its own motion asked that one who had an undoubted right to maintain the action be made a party, it cannot now be heard to say that there is no proper party to the action. Once the city was made a party it is in the action for all purposes.

We now come to the proposition of whether the thirty-seven resolutions passed subsequent to the passage of ordinance No. 10-306 are valid.

It is the contention of defendant that once the city by an ordinance passed in compliance with the provisions of G. S. 1935, 13-2801, gave defendant the right to sell gas in the city, limited the time the franchise should run, provided for the right of the commissioners to fix rates, and fixed certain of the receipts from business which defendant should pay the city, the matter of the extension of the system of defendant into other parts of the city was a detail which the city governing body could provide for from time to time by resolution or ordinance without any reference to the statute.

The pertinent provisions of G. S. 1935, 13-2801, have already been included in this opinion. Attention is again called to the provision

of paragraph 10 of that act. The paragraph provides that the act shall apply to all amendments, extensions or enlargements of any franchise. Depending on the language alone, it might very well be said that if the thiry-seven subsequent resolutions were not amendments or extensions of ordinance No. 10-306 they certainly were enlargements of the franchise granted by that ordinance. In this connection an examination of the ordinances is helpful. Ordinance No. 8724 first provides that a franchise to operate a gas distribution system is granted. The ordinance then provides that upon the acceptance of the franchise it shall constitute a binding contract on the grantee "to supply an adequate service to commercial, industrial consumers along the route of the lines through the city of Wichita as herein specified and as may be hereafter changed as herein provided." The ordinance then set out in detail the particular streets along which defendant was given a franchise to lay pipe. At the end of this section of the ordinance comes the provision upon which defendant is depending in this case. It has already been set out in this opinion. Then follow provisions about the term the franchise was to run, the compensation to be paid the city, regulations about laying pipe, other operating details, and a provision as to fixing rates. No obligation was assumed by the grantee when that ordinance was accepted, further than to furnish natural gas for industrial purposes along the streets named. Ordinance No. 10-306 provided in section number 1 thereof that section 1 of ordinance 8724 be amended by inserting the word "domestic" so that it reads "for the purpose of supplying domestic and commercial industrial natural gas," also, section 14 was amended as to rates. Thus in neither one of these ordinances was the grantee authorized to furnish any gas along any other streets than those named. An examination of the resolutions, the validity of which is attacked in this action, discloses that they, every one, grant to the Wichison Company "the right and privilege to construct, maintain and operate mains, pipes, boxes, reducing stations, laterals, conduits and service extensions, together with all the necessary appurtenances for the purpose of supplying natural gas for light, heat, power and other purposes," along certain streets named. These resolutions clearly indicate that neither the gas company nor the city had any idea that the gas company could go ahead and build along other streets in the city without permission. These resolutions conferred all the rights on the gas company for the territory named that were conferred by

the original ordinances. If the effect of these resolutions was not to extend and enlarge the original franchise ordinance then it would be difficult to draw an ordinance that would have such an effect. It is true that each one of the subsequent resolutions referred to ordinance No. 10-306, but the reference was that the right to occupy the streets was granted in accordance with the terms and provisions of that ordinance. This reference was to the duration of the franchise, the payment of money to the city, and other details covering the administration of the ordinance.

A consideration of the purpose for which G. S. 1935, 13-2801, was passed is helpful. This act was passed in 1907 as part of the act giving cities the right to come under the commission form of government. The provisions requiring that the ordinance be read in full at three regular meetings of the board of commissioners, requiring publication for three consecutive weeks, and deferring the effective date of the ordinance for sixty days were all inserted in the statute so that no franchise would ever be granted without the people having an opportunity to acquaint themselves with its terms. As long as the bright light of publicity beats down upon a public official it is easier for him to safeguard the rights of the people. Then the sixty-day provision was inserted so that the people interested would have that long in which to circulate petitions and secure the necessary signers thereon to make necessary the calling of an election. It is all part of a general comprehensive plan to cover the question of cities granting franchises. The plan followed in this case had the effect of nullifying that statute. When the first ordinance was passed providing for furnishing industrial gas it would have been strange if ten percent of the electors of the city who voted for mayor would have taken interest enough in the statute to circulate petitions and call for an election. Only a few streets were included in the grant and only a few consumers affected. The clause upon which defendant gas company is relying here was in that ordinance, but at that stage of the game a citizen would be justified in concluding that this clause covered only the laying of pipes in the street for the purpose of serving additional industrial consumers. When subsequently the second ordinance was passed the only amendment made in the first one was to add the word "domestic" to the words "industrial and commercial." Again, it would have been strange if the electors of the entire city had been sufficiently interested to circulate petitions asking for an election. Should

this court hold that the plan followed here was not covered by G. S. 1935, 13-2801, then the statute could be nullified in most cases. It must be remembered that we are dealing with a matter that was intended to cover the entire city and with a general plan. There is a particular reason why the subject of utility franchises should be dealt with from the standpoint of. its effect on the entire city. Once a company has entered a field, the common weal demands that it serve all alike, both the profitable customers and the unprofitable ones. Should the present plan be approved then a company could enter a city, lay its mains, and serve the industrial and profitable domestic consumers and let the less attractive districts go without service.

There can be no doubt that the granting of franchises to utilities by a city is a governmental function and the statutes which provide how the power should be exercised must be strictly complied with. In *State, ex rel., v. City of Newton,* 138 Kan. 78, 23 P. 2d 463, this court said:

"The city, acting in its governmental capacity, grants the franchise to the utility for the purpose of carrying out a governmental or quasi-governmental function."

In *Shaffer v. Haddam City,* 130 Kan. 450, 286 Pac. 218, this court said:

"An ordinance duly adopted is necessary to the validity of an order to build a sidewalk and to make a levy of a special assessment on abutting property to pay therefor, in a city of the third class, and such proceedings based on a motion alone are illegal and void." (Syl. ¶ 1.)

In *Simmonds v. Meyn,* 134 Kan. 419, 7 P. 2d 506, this court held to the same effect and referred to the rule laid down in 43 C. J. and 19 R. C. L. 43 C. J. 543 states the rule as follows:

"To give validity to the enactment published, substantial compliance at least with the mode prescribed by charter or statutory provision is necessary."

Also, at page 251, as follows:

"Where the method provided for exercising the power is by ordinance or bylaw no other method than that so prescribed will suffice to give validity to the action of the municipal governing body."

Also, on page 541 of 43 C. J., as follows:

"Charter or statutory provisions to the effect that ordinances or resolutions shall not go into effect until after publication in the manner provided by statute, that they shall be null and void unless published in accordance with the requirements, that they shall take effect after publication in the manner pro-

vided by statute, . . . have been held mandatory and on failure to comply therewith the ordinance or resolution is of no effect."

In 19 R. C. L., page 888, the rule is stated as follows:

"When a statute provides a mode of procedure for municipal councils designed to protect the citizens and taxpayers from hasty and ill-considered legislation or to enforce publicity in the actions of the council the mode of procedure thus prescribed must be strictly observed. . . . Among the requirements thus held to be mandatory is included a provision that ordinances shall be read upon three distinct days."

To the same effect is *State, ex rel., v. City of Coffeyville,* 138 Kan. 909, 28 P. 2d 1032.

Defendant cites and relies on several cases where it was held that in the case of street railway companies where a franchise ordinance gave a streetcar company the right to construct and operate a streetcar line on such streets as might thereafter be designated, and on such other streets as the city council might from time to time designate, a subsequent resolution permitting the railway to occupy another street did not amount to the granting of a new franchise. We have read these cases, and have concluded that they are not in point here. There is a fundamental distinction between a system of gas mains for distribution of natural gas and a streetcar system. In the case of a street railway system, when a line of the system is built into a certain portion of the city it serves all the residents of that section. In the case of a gas-distributing system, in order for a resident to be served by the company, mains must be laid in the street in front of his house or in the alley back of it. In the case of a gas company the franchise must contemplate a right to occupy substantially every street in the city. In the case of a street railway system, in order to provide for shifting growth of the city the governing body must retain the right to direct the streetcar company to extend its lines into such additional portions of the city as growth and a shifting population render advisable.

We have concluded that the granting of the franchise in question was covered by G. S. 1935, 13-2801, that the thirty-seven resolutions passed subsequent to the passage of ordinance No. 10-306 were not passed in conformance with the statutes, and are invalid.

Defendant next argues that even should the thirty-seven subsequent resolutions be held invalid, the plaintiff is barred from raising the question of their invalidity by prior litigation. To sustain this position defendant points out the litigation already referred to in

this opinion where plaintiff contested the granting of a certificate of convenience and necessity to defendant by the public utilities commission. It is pointed out that plaintiff resisted the granting of this certificate before the commission and contested the matter in each case to this court. Defendant argues that plaintiff raised the question of the validity of the two basic ordinances in that litigation, and that when the question of their validity was adjudicated every question that involved the validity of the ordinances in any way was settled against plaintiff. In connection with this argument it is pointed out that three of the ordinances that are attacked here had been passed and were introduced in evidence at the hearing before the commission on the application for a certificate. In consideration of this argument it is interesting to examine the allegations of plaintiff made by it in resisting the application of defendant for a certificate. These allegations were that ordinance No. 10-306 was invalid, first, because it granted to defendant the right to serve domestic gas to consumers located along its industrial lines and did not impose upon it the obligation to serve all residents of the entire city, and because it was beyond the power of the city to grant a franchise to a company to serve certain favored classes of the residents of the city as distinguished from the whole city; second, that the commission was without authority to grant a certificate of convenience and necessity unless public convenience would thereby be promoted, and it was apparent upon the face of the ordinance that the applicant only proposed to serve a small percentage of the inhabitants of the city; and third, that the ordinance was void because it placed no obligation upon the applicant to furnish any gas to anybody. The ground upon which plaintiff argues here that the thirty-seven subsequent resolutions are invalid was not raised by those pleadings in that hearing as to ordinance No. 10-306 for the obvious reason that it had been passed in conformance with G. S. 1935, 13-2801. Neither was the validity of the three subsequent ordinances that had already been passed raised in that proceeding. The only question tried out before the commission was whether public convenience and necessity would be served by permitting the companies to enter the field. When the case reached this court that was the question urged. The turning point in the case was the rule that this court would not overturn a finding of fact reached by an administrative tribunal such as the commission. (See *Kansas Gas & Electric Co. v. Public Service Com.*, 122 Kan. 462, 251 Pac. 1097;

also, *Wichita Gas Co. v. Public Service Com.*, 132 Kan. 459, 295 Pac. 668.) Even if the question of whether the ordinances had been passed in conformance with the statute had been presented to the commission, the decision of that tribunal on the question would not have had the binding effect of a judicial determination. Administrative bodies such as utilities commissions are not courts and do not have authority to render binding judgments on legal questions. In *State v. Missouri Utilities Co.*, 53 S. W. 2d 394, the court said:

"As said in *Bethlehem C. W. Co. v. Pub. Serv. Com.*, 70 Pa. Super. Ct. 499, 501: 'In granting a certificate of public convenience the commission confers no new chartered powers on any company. It takes away from no company any right or power then legally existing. As it is not a judicial body but an administrative one, its order, made from the standpoint of the public convenience solely, cannot be made the foundation for the judicial determination of what franchises do or do not belong to any corporation interested. . . .'" (p. 399.)

In *State, ex rel., v. Public Service Comm.*, 135 Kan. 491, 11 P. 2d 999, this court said:

"As generally understood, a court is a judicial tribunal which has power to hear and decide justiciable controversies and to give binding judgments thereon. The powers conferred on the commission by the statute under scrutiny do not extend so far. By its terms the commission is authorized to investigate complaints; . . . but the commission is not authorized to make binding adjudications." (p. 495.)

See, also, *Kansas Gas & Electric Co. v. Public Service Com.*, supra; *Wichita Gas Co. v. Public Service Com.*, supra, and *Southern Kansas Stage Lines Co. v. Public Service Com.*, 135 Kan. 657, 11 P. 2d 985.

Defendant next argues that plaintiff is estopped from raising the question of the invalidity of the resolutions because of laches. In support of this argument defendant points out that plaintiff stood by and allowed the defendant company to rely on the validity of the thirty-seven resolutions and to spend a great deal of money in laying its pipes and mains in the various sections of the city and did not complain.

The rule as to what should constitute equitable estoppel is very well stated in 10 R. C. L., page 689. There it is said:

"So, while the attempted definitions of such an estoppel are numerous, few of them can be considered satisfactory, for the reason that an equitable estoppel rests largely on the facts and circumstances of the particular case and consequently any attempted definition usually amounts to no more than a declaration of an estoppel under those facts and circumstances. . . . The following, however, may be ventured as the sum of all cases: That a

person is held to a representation made or a position assumed, where otherwise inequitable consequences would result to another who, having the right to do so under all of the circumstances of the case, has, in good faith, relied thereon. Such an estoppel is founded on morality and justice."

The doctrine of equitable estoppel is just what the name implies. Each case where the doctrine is raised as a defense must depend on its own facts. Here there can be no claim that the conduct of defendant was influenced by any conduct or concealment or positive action on the part of plaintiff. Under all the circumstances there can be but little doubt that course of action pursued by defendant was part of a general plan. In its brief the city takes the position that all relief should be denied plaintiff. The first point argued by the city is that plaintiff does not stand in any better light than the city would have had it brought the action as plaintiff. The city cites *City of Wichita v. Wichita Gas Co.,* 126 Kan. 764, 271 Pac. 270. That was the case where the city, that is, defendant here, attacked the ordinance under which the predecessor of plaintiff in this action was operating at that time. In that action this court held that G. S. 1935, 13-2801, did not apply to the ordinance in question. An examination of that opinion discloses that this court held the ordinance in that case was passed pursuant to R. S. 12-824, which is now G. S. 1935, 12-824. Obviously both ordinances 8728 and 10-306 in this action were passed pursuant to G. S. 1935, 13-2801. The subsequent resolutions which are attacked here were not passed pursuant to either section, both of which require more extensive publication than these resolutions received, and provide for an election, hence they are invalid under either statute. The second point argued by the city is that even should these resolutions be held invalid under G. S. 1935, 13-2801, they would be valid as a license granted by the city to use the streets. This contention was dealt with in this opinion when we held that a statute such as G. S. 1935, 13-2801, should be strictly complied with. That statute was enacted to provide for granting franchises to utility companies, and its purpose and effect cannot be evaded.

At this point we will refer to the relief prayed for by the plaintiff. In the first place plaintiff prays that the thirty-seven resolutions passed subsequent to the passage of ordinance No. 10-306 be declared void and of no effect and that the defendant be adjudged to have acquired no right or authority under them to oc-

cupy the streets for the purpose of distribution of gas. In accordance with what has been said we hold that as to this portion of the prayer judgment will be for the plaintiff. The plaintiff further prays that the defendant be ousted from the further occupancy of these streets for the purpose of distributing gas. In consideration of this portion of the prayer this court is inclined to give some consideration to the argument made by defendant on the question of whether plaintiff is estopped by laches from raising the invalidity of these resolutions.

An action in quo. warranto is addressed to the sound discretion of the court as to whether the particular relief prayed for should be granted. In consideration of such a question the court considers all the surrounding facts and circumstances. The relief prayed for is not always granted even though the questions of law upon which the relief prayed for depends are decided in favor of plaintiff.

The most recent case on this subject is *State, ex rel., v. Allen County Comm'rs*, 143 Kan 898, 57 P. 2d 450. That was a case where the state was challenging an election that had been held on the question of adopting the county unit system of maintaining the roads of the county. The action was in quo warranto. This court held that the election was invalid. On the question of whether judgment should be entered ousting the county commissioners from exercising the powers they had assumed as a result of the election this court said the question "is addressed in a large degree to the sound discretion of the court." Many cases were cited in which the remedy of ouster has been withheld. *Little v. Davis*, 80 Kan. 777, 104 Pac. 560, was a quo warranto action to contest an election to office. This court reviewed the authorities on the question of the discretion in the court on questions of ouster and held that the action should not be entertained. This court said:

"It is obvious, however, that the court's discretion is not exhausted when it determines whether there is another adequate remedy. On the contrary, the question whether under all the facts and circumstances relief shall be granted rests in the judicial discretion. Before the adoption of the code it was discretionary with the courts whether the writ of quo warranto should issue at the suit of a private party." (p. 781.)

Also—

"In at least two cases this court has recognized the principle that the judicial discretion which controls the action is broad enough to determine whether under all the circumstances the relief shall be granted." (p. 782.)

The case of *State, ex rel., v. Stewart*, 90 Kan. 778, 135 Pac. 1182,

is helpful in this connection. There a member of a school board had failed to qualify for a year after his election. The statute provided that any such officer who should fail to qualify twenty days after his election should thereby forfeit his office. There was no doubt but that defendant in that case had so failed. When an ouster suit was brought, however, this court said:

"No reason is suggested why the $20,000 bond was not good and none appears from the record. Had it been approved the funds would have been amply secured, and while it is true that it was not tendered until some time after this action was begun, and while the defendant could not by this tardy act defeat the state's action, still it does not follow that ouster is imperative. Conceding that the prolonged and needless delay on the part of the defendant affords a legal justification for his removal, still it is manifest that his failure to qualify was not a studied one for the accomplishment of any wrongful object." (p. 781.)

In *Albach v. Fraternal Aid Union,* 100 Kan. 511, 164 Pac. 1065, this court considered an action in quo warranto brought by members and certificate holders of a fraternal insurance society to oust this company from operating under a merger. This court denied the relief sought because the action was not brought by the proper public officials. This court said:

"In the facts alleged and the relief prayed for in this action the proceeding in effect is quo warranto. Except in most unusual cases, such an action can only be maintained in the name of the state by its proper legal representative—the attorney general, or, perhaps, by the county attorney. And even if so maintained, the relief to be given is to some extent discretionary with the court. (*City of Topeka v. Water Co.,* 58 Kan. 349, 353, 49 Pac. 79.) Where as most likely in the case at bar, the result would be to wreck an institution that is doing a beneficial and humanitarian work notwithstanding some possible defects in its financial or economic structure, the state's responsible legal representative should consider well whether such action should be instituted (*The State v. Bowden,* 80 Kan. 49, 56, 57, 101 Pac. 654), and the court would consider with profound solicitude whether the remedy prayed for was not worse than the evil complained of. At all events, it is clear that the plaintiffs cannot maintain this action. The petition did not state a cause of action redressable at the instance of the plaintiffs in their individual capacity (31 Cyc. 296)." (p. 517.)

*State, ex rel., v. Cannon et al.,* 116 Kan. 325, 226 Pac. 777, was a case where quo warranto was brought to oust the officers of a consolidated school district because the proper notices of the contemplated action were not given by the county superintendent. This court refused ouster and said:

"In quo warranto the court is vested with considerable discretion (*Tarbox v. Sughrue,* 36 Kan. 225, 12 Pac. 935; *The State v. Bowden,* 80 Kan. 49, 101

Pac. 654), and in view of the appeals, the hearings had on the appeals, and the subsequent notices, hearings and decisions, we conclude that the lack of notice of the original action of the county superintendent is not a good ground for holding the organizations to be void or for the ouster of the officers of the new districts." (p. 328.)

*State, ex rel., v. Wyandotte County,* 117 Kan. 151, 230 Pac. 531, was a quo warranto action wherein the state sought a declaratory judgment that certain bonds of Wyandotte county were void. This court reviewed the facts and refused to make any ruling. This court said:

"When an action has been commenced and the cause of action is before the court for adjudication, the court has discretion to grant or withhold relief, and this is true whether the action be prosecuted in the name of the state or in the name of a private person." (p. 159.)

Also—

"Even although there be departures from legal limitations and standards, ouster does not mechanically follow. The court may take a broad view of motives, conduct, situations and circumstances, and of the ultimate consequences of application of the remedy, whether useless, beneficial or harmful." (p. 159.)

Also—

"In other states it has been held that the court may, in the exercise of its discretion, take into consideration the position and motives of the relator, the interest or policy of granting the remedy, the public interest, convenience, or detriment, the prospect of strife, confusion and litigation, and unreasonable delay or acquiescence of the complaining party. The state itself may be denied relief when there has been long acquiescence or recognition." (p. 159.) (See, also, *State v. Harvester Co.,* 81 Kan. 610, 106 Pac. 1053.)

As has been stated heretofore in this opinion this action is one chapter in a warfare that has been going on in Wichita since 1925 between these two gas companies and their predecessors. This is the third time the matter has been in this court. There have been three findings at different stages of the affair by the administrative body vested with authority over such matters that public convenience and necessity would be benefited by permitting defendant to operate. In this opinion it is held that litigation growing out of these findings did not bar plaintiff from securing an adjudication as to the validity of the resolutions, but it should be considered on the question of whether the drastic relief of ordering defendant to vacate the streets now occupied by it shall be allowed. On the question of whether there was another remedy, which seems to have considerable weight in the cases just cited where ouster was

denied, it might be pointed out that plaintiff could have called attention of the proper officer of the state, either the county attorney or the attorney general, that the law was being violated, at the time the hearing on the application for a certificate of public convenience and necessity was had following the passage of ordinance No. 10-306. In view of the strife that has been going on between these companies it hardly seems possible that plaintiff did not know under what type of ordinances the defendant was doing business. Furthermore, under the authority of *Wichita Transportation Co. v. Peoples Taxicab Co.*, 140 Kan. 40, 34 P. 2d 550, plaintiff could have begun an action to enjoin defendant from proceeding under any one of the thirty-seven resolutions attacked here.

As to the proposition that there has been long acquiescence or recognition of the rights defendant claims under the resolutions it should be remembered that these thirty-seven resolutions were passed at different times extending over seven years. All this time plaintiff must have known that defendant was spending thousands of dollars in laying pipes, and doing other construction work in the portions of the city designated in the resolutions. This is not a case where it can be said that there was bad faith or any culpable violation of the law. There was ample ground for a difference of opinion on the part of able counsel as to whether the resolutions in question were valid. Acquiescence or unreasonable delay in seeking the remedy would justify a court in denying a writ of quo warranto. (See *The People v. Hepler*, 240 Ill. 196, 88 N. E. 491; also, *The People v. Lease*, 248 Ill. 187, 93 N. E. 783.) In the latter case the court affirmed a decision that invalidated a great many drainage bonds and said:

"This suggestion overlooks the rule that the remedy by an information in the nature of quo warranto is not a matter of absolute right but is a subject for the exercise of a sound judicial discretion, and that considerations of the public interest or convenience, as well as unreasonable delay or acquiescence on the part of the persons complaining, will justify a refusal to grant leave to file an information or to proceed to judgment. (*People v. Hanker*, 197 Ill. 409; *People v. Schnepp*, 179 id. 305.) The principle would have full application in the cases referred to but is without force in this case, in which the order for the organization of the district was made August 18, 1909, the petition for leave to file the information was filed January 1, 1910, and it does not appear that any corporate action was attempted in the meantime." (p. 194.)

The action was one in quo warranto to oust the city officials from exercising jurisdiction over the annexed territory. The court held

that the statute was void under which the annexation was had, but refused quo warranto in the main because too much time had elapsed before the institution of the action.

We have concluded that in this action under all the facts and circumstances we should not render a judgment ousting the defendant from the streets it is now occupying.

The judgment therefore will be that the thirty-seven resolutions are held to be invalid and the defendant is enjoined from doing any further extension work in the portions of the city streets covered by these resolutions, while the writ of ouster prayed against defendant ousting it from occupying that part of the city streets where it already has its pipes and mains laid, is denied.